**Marshall ROBERTS et al.**

v.

**EXXON CORPORATION.**

**Civ. A. No. 18872.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

March 16, 1977.

---

William E. Logan, Jr., Lafayette, La., and Walter G. Murphy and Harold Brown, Boston, Mass., David Berger, Warren D. Mulloy, Bruce K. Cohen and Warren Rubin, Philadelphia, Pa., for plaintiffs.

Bernard J. Caillouet, New Orleans, La., Keith E. Pugh, Jr., Howrey, Simon, Baker & Murchikon, Washington, D. C., Robert T. Jorden, Liskow & Lewis, Lafayette, La., for defendant.

PUTNAM, Senior District Judge.

The plaintiffs in this case, Marshall Roberts and Guy Benitez, allege violations of the antitrust laws by defendant, Exxon Corporation. Benitez operated two automatic service stations for Exxon from June 2, 1969 to September 6, 1971 under the terms of a "Commission Manager" contract under which he is considered by defendant as an employee of the company. Roberts, on the other hand, has operated as an independent dealer for Exxon in this area and continues to so act. The gravamen of the complaint is the fact that Exxon fixes the retail prices for the sale of its gasoline products at the stations operated by the "Commission Manager", Benitez. The threshold question is whether or not this plaintiff is in fact an employee of Exxon or, for purposes of the antitrust laws, an independent business man.

The parties have stipulated the facts on this issue and both have moved for summary judgment based upon this stipulation. The record is most voluminous. The authorities cited by able counsel are legion. After reviewing the facts agreed to, the affidavits filed in support of the motions and the briefs, we reach the conclusion that the motion of plaintiffs should be granted and hold that for all intents and purposes this "Commission Manager" agreement confected by defendant is nothing more than a consignment of goods to Benitez enabling Exxon to fix retail prices at the pump.

A detailed review of the uncontested issues established by the record is not necessary for purposes of this decision. Suffice it to say that Benitez was clothed under the "Commission Manager" agreement with many of the attributes of an independent business man and also with many attributes of an employee. He operated his own independent garage and repair business on the premises occupied by him with defendant's permission, he sold tires, batteries, and accessories (TBA) furnished to him by defendant on consignment and for which he was paid a commission based upon a fixed percentage. All gasoline and petroleum products used in the service station business was sent to him by Exxon ostensibly as Exxon's own goods, but which he kept and stored at his own risk except for losses resulting from acts of God or other forces beyond his control. On gasoline he was paid a commission varying from three and half to four and a half cents per gallon, depending upon

the price and quality of the gasoline sold. Exxon fixed all prices. The agreement was terminable at will by either party. If the prices were not competitive and plaintiff Benitez lost money, it was his loss; there was no minimum income guaranteed to him. Regardless of the appellation given to his relationship with the defendant, the status of the goods in commerce was no different than the status of the goods in the lease consignment agreement before the Court in *Simpson v. Union Oil Co.,* 1964, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98. We view it as a retail price fixing arrangement and a per se violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1.

Since the decision in *Simpson,* it is clear that the relationship of the commission manager vis-a-vis the defendant distributor or manufacturer under general principles of master and servant is not the main issue in such litigation. Cf. *Lehrman v. Gulf Oil Corp.,* 5 Cir. 1972, 464 F.2d 26; *Greene v. General Foods Corp.,* 5 Cir. 1975, 517 F.2d 635, Part III, at page 647 et seq., and *Goldinger v. Boron Oil Co.,* W.D.Pa.1974, 375 F.Supp. 400.

In *Greene,* supra, Judge Wisdom as the organ of the court gives an excellent discussion of the development of the law before and after *Simpson v. Union Oil Co.,* supra. Given a device such as the commission manager agreement in this case as it is interpreted by defendant in addition to its already overwhelmingly powerful economic arsenal, would enable Exxon to underprice and drive from the market place all independent distributors or dealers in its petroleum products, thereby depriving the public of the benefit of competitive prices in a substantial area of the business.

For the foregoing reasons, the motion for summary judgment on the issue of whether or not plaintiff Guy Benitez was an employee of the defendant Exxon is decided in favor of plaintiffs. The motion for summary judgment filed by Exxon is denied.

In view of the stipulation filed in the record on May 6, 1975, paragraph 5, to the effect that in the event plaintiffs prevail in their motion there may be further proceedings before this court to determine causation, impact, damages, and the defendant's counterclaim, which will involve a lengthy trial of these issues, the question of law presented by this motion is controlling. Since there is clearly substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation, we will certify it for an immediate appeal under 28 U.S. C.A. § 1292(b).

The attorneys for plaintiffs will forthwith prepare a formal order in keeping with the forging, for signature by the Court. Judgment shall not be entered by the Clerk until such order has been signed and filed.

Rendered at Lafayette, Louisiana, April 29, 1976.[1]

ADDENDUM I

942-0105-1 S-1440-1

/S # 2163
LAFAYETTE, LOUISIANA

## SERVICE STATION MANAGER AGREEMENT

THIS AGREEMENT made this 9th day of MARCH, 1970, between HUMBLE OIL & REFINING COMPANY, a Delaware corporation, having an office at ___1211 Union Avenue___
(Address)

_____, ___Memphis___, ___Tennessee___,
(City) (State)

hereinafter called "Humble", and _____GUY E. BENITEZ_____,

whose address is ___2307 W. ST. MARY BLVD.___, ___LAFAYETTE___, ___LOUISIANA___,
(Address) (City) (State)

hereinafter called "Manager".

---

1. See Addendum I for the full text of the "Service Station Manager Agreement" executed by Benitez with Humble (now Exxon), on March 9, 1970, for the operation of the station located at Highway 167 and Chalmette Drive in the city of Lafayette, which is identical to the contract for the other location operated by this plaintiff.

WITNESSETH:

## 1. EMPLOYMENT

Humble hereby employs Manager, commencing on the ____9th____ day of ____March____, 1970, subject to all the terms and conditions hereof, to superintend, manage and operate its service station located at _____U. S. 167 & Chalmette Drive_____, _____Lafayette_____, _____Louisiana_____.
<br> (Address) (City) (State)

## 2. HUMBLE'S PRODUCTS

Humble shall make, or cause to be made, deliveries of motor fuels and such other products as Humble shall select to the service station from time to time, in such quantities as Humble shall determine. Title to such products shall remain in Humble until sold for Humble's account when title shall pass directly from Humble to the service station customer. All sales of Humble-owned products shall be at retail prices fixed by Humble from time to time.

The entire proceeds of all sales of Humble-owned products, both cash and service station delivery tickets pursuant to approved credit card sales, are the property of Humble. Manager shall segregate such proceeds and hold the same in trust for Humble until delivery to Humble as hereinafter provided.

Manager shall account to Humble for sales of its products by remitting to Humble daily, or at such other time as Humble may specify, all delivery tickets on credit sales plus Manager's own check, bank cashier's draft or money order, as Humble may require, for all cash sales made since Manager's last previous accounting, or shall otherwise account and make remittances as required by Humble.

## 3. OTHER PRODUCTS

Manager may with Humble's consent purchase from Humble and others and resell other products and accessories usually sold at service stations.

## 4. SERVICES

Manager shall perform service work usually rendered at service stations, and shall comply with the instructions of Humble with respect to the performance of such service work and the prices to be charged therefor. Manager shall account to Humble for proceeds received for service work as required by Humble.

## 5. COMMISSIONS

Manager shall receive commissions on sales of Humble-owned products and on service work in accordance with Schedule "A" attached hereto and made a part hereof. Humble shall have the right to revise said Schedule "A" from time to time.

## 6. DUTIES OF MANAGER

Manager agrees to conduct a first-class service station business upon the premises; to render to the public courteous, efficient and prompt service; to keep the service station premises in a clean, healthful and attractive condition; and to comply with all instructions of Humble as to standards of service and hours of operation. Manager and personnel operating the service station shall wear uniforms acceptable to Humble.

Manager shall keep such records and make such reports and accountings as Humble may require for all business done at the service station, and Humble may at any time examine such records, reports and accountings and make such inventories and inspections as it deems necessary. Manager agrees to retain or to turn over to Humble as Humble may require such records of business done at the station as in Humble's opinion may be necessary or required for federal, state or local tax audits.

Manager shall take proper care of all real and personal property of Humble that is placed in his charge, and will make all minor repairs and adjustments and will promptly notify Humble of all necessary major repairs. A complete list of all equipment owned by Humble and located upon the premises is attached hereto as Schedule "B", and Manager hereby acknowledges receipt of such equipment in good condition.

Manager assumes responsibility for Humble-owned products delivered to the station and for proceeds received from the sale thereof, and for proceeds from service work, and for equipment shown on Schedule "B", but Manager shall not be liable for loss of or damage to the same or to the service station building where Manager can show that such loss or damage was caused by fire, explosion, storm or other acts of God, or by causes beyond Manager's reasonable control.

Manager shall hire adequate personnel satisfactory to Humble to properly operate the service station, and shall be responsible for supervising such personnel in the performance of their duties in accordance with all instructions of Humble as to standards of service and employment. The wages paid such personnel by Manager and their hours of work shall comply with the requirements of State or Federal Law where applicable.

Manager has no authority and agrees not to obligate Humble on any contract, warranty or guarantee, or to bind Humble's credit in any respect whatsoever, unless expressly authorized by Humble in writing.

### 7. MISCELLANEOUS COSTS OF OPERATION

Miscellaneous costs of operation including, but not limited to, supplies, licenses, claims, insurance, heating, cooling, electricity, water, telephone and other utilities, shall be borne as provided in Schedule "C" attached hereto.

### 8. TAXES

Manager shall collect, account for and deliver to Humble all excise and sales taxes applicable to sales of Humble-owned products, products and accessories purchased from Humble and others for resale and service work performed hereunder. Humble will file the necessary excise and sales tax returns and remit amounts due thereon to the proper taxing authorities. Manager agrees to bear any additional tax, interest and penalties which result from Manager's failure to collect, account for and deliver to Humble such excise and sales taxes, or which result from Manager's failure to keep proper records with respect to such taxes.

Manager shall withhold and pay over to Humble all amounts that are required by any law to be withheld with respect to the salaries, commissions or wages of Manager and other station personnel (including, but not limited to, federal, state and local income taxes, social security taxes, and state unemployment taxes or disability fund payments, if any). Humble will file the necessary returns and remit amounts collected from Manager to the proper taxing authorities and will also pay to such authorities the additional taxes, contributions and moneys due by Humble with respect to Manager and other station personnel in Humble's capacity as an employer.

Humble agrees to file necessary returns and make payment to the proper authorities for all taxes levied or assessed against all of Humble's real and personal property situated in and upon the premises and all other business taxes which may be levied or assessed against the premises or the business or operations conducted thereon, except that Manager shall be responsible for and agrees to file necessary returns and make payment to the proper authorities for federal, state and local income taxes due and payable from Manager and for taxes levied or assessed against all of Manager's property situated in or upon the premises.

### 9. TERMINATION

Humble or Manager may terminate this Agreement at any time by written notice to the other delivered in person or mailed to the address set forth above.

Upon termination of this Agreement, Manager shall vacate the service station premises and surrender custody of all of Humble's property and equipment, including products not theretofore sold, and deliver to Humble the proceeds of all its products which have been sold since the last previous accounting and any other sums due Humble. Humble shall repurchase from Manager, at Manager's cost of acquisition, such products or accessories as Manager has in stock which Manager purchased from Humble and which are in good condition.

Any property owned by Manager, which is not removed from the premises by Manager within 24 hours after the termination of this Agreement, may be stored by Humble for Manager at Manager's sole risk and expense or may be rented by Humble for $1.00 per month until it is removed or otherwise disposed of by Manager.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed the day and year first above written.

HUMBLE OIL & REFINING COMPANY

(s) John L Ovento
 Witness

By(s) D H Luncford

(s) E C King
 Witness

(s) Guy E. Benitez
 Manager

Alternate
(Rev. 3/18/69) S/S2

SCHEDULE "A"
TO
SERVICE STATION MANAGER AGREEMENT

In full payment for all sales made and all services performed by Manager and Service Station Attendants hereunder, HUMBLE shall pay Manager Commissions as set forth below in this Schedule "A" subject to HUMBLE's right to revise or change such schedule from time to time. Unless otherwise expressly authorized by HUMBLE, the Manager shall remit all sales, less commissions, each day following the sale.

Manager's commissions on sales of HUMBLE-owned products shall be as follows:

 A. MOTOR GASOLINE AND DIESEL FUEL:

1. HUMBLE'S Branded Motor Fuel:

ESSO

| Retail Price (¢/Gal.) | Commission (¢/Gal.) | Retail Price (¢/Gal.) | Commission (¢/Gal.) |
|---|---|---|---|
| 34.0 – 34.9 (and Above) | 3.9 | 30.0 – 30.9 | 3.0 |
| 33.0 – 33.9 | 3.6 | 29.0 – 29.9 | 3.0 |
| 32.0 – 32.9 | 3.3 | 28.0 – 28.9 | 3.0 |
| 31.0 – 31.9 | 3.0 | 27.0 – 27.9 (& Below) | 3.0 |

ESSO PLUS

| | | | |
|---|---|---|---|
| 36.0 – 36.9 (and Above) | 4.1 | 32.0 – 32.9 | 3.2 |
| 35.0 – 35.9 | 3.8 | 31.0 – 31.9 | 3.2 |
| 34.0 – 34.9 | 3.5 | 30.0 – 30.9 | 3.2 |
| 33.0 – 33.9 | 3.2 | 29.0 – 29.9 (& BELOW) | 3.2 |

ESSO EXTRA

| | | | |
|---|---|---|---|
| 38.0 – 38.9 (and Above) | 4.4 | 34.0 – 34.9 | 3.5 |
| 37.0 – 37.9 | 4.1 | 33.0 – 33.9 | 3.5 |
| 36.0 – 36.9 | 3.8 | 32.0 – 32.9 | 3.5 |
| 35.0 – 35.9 | 3.5 | 31.0 – 31.9 (& Below) | 3.5 |

(NOTE: Retail prices include Federal and State Gasoline Taxes and State Sales Taxes where applicable.)

2. Diesel Fuel _____ ¢/Gal.)

 B. LUBRICATING OILS AND OTHER NON–VOLATILE PETROLEUM PRODUCTS (EX-CLUDING ANTI–FREEZE): Forty per cent (40%) of HUMBLE's established retail service station sales price, excluding tax, applicable at the time and for the place of sale.

C. ANTI–FREEZE: Forty-five per cent (45%) of HUMBLE's established sales price applicable to the time and for the place of sale.

D. TIRES, TUBES AND BATTERIES: A percentage of the Suggested Retail Price for Adjustment Purpose Only (Including Federal Excise Tax) as quoted in the current TBA Buying and Selling Guide (Dealer).

| Atlas Tires | Commission |
|---|---|
| "HP," Plycron and Weathergard | 31% per unit |
| Grip Safe | 27% per unit |
| Mile Pak | 18% per unit |
| Atlas Tubes | 50% per unit |
| Atlas Batteries | |
| HD & PHD | 31% per unit |
| A | 25% per unit |
| K | 18% per unit |

Manager shall retain all proceeds received by Manager for service work.

Effective _____3/9/70_____, this schedule supersedes any previous Commission Schedules signed by me and is hereby accepted as part of Service Station Manager Agreement signed by me and dated _____3/9/70_____.

| _____Guy E. Benitez_____ | _____2163_____ | _____Lafayette, Louisiana_____ |
|---|---|---|
| Manager | S/S No. | City and State |
| _____3/9/70_____ | | |
| Date | | |

SCHEDULE "B" TO
SERVICE STATION MANAGER AGREEMENT

DATED _____3/9/70_____

Equipment Owned by Humble

6—Model Trimline G&B Dispensers
3—Submerged Turbine Pumps
3—6000 Gal. U. G. Tanks
1— 550 Gal. U. G. Tank
1—G&B Frame Contact Grease Lift
1—3 HP G&B Air Compressor
1—Major Sign & Pole (Plastic Oval)
1—Coats Iron Tireman
2—Sel Oil Cabinets
1—2–Reel Overhead Greasing Unit
1— 400 Lb. Gear Oil Pump
1— 400 Lb. Chassis Grease Pump

Receipt of the above equipment in good condition is hereby acknowledged.

| _____(s) E. C. King_____ | _____Guy E. Benitez_____ |
|---|---|
| Witness | Manager |

SCHEDULE "C" OF
SERVICE STATION MANAGER AGREEMENT
Miscellaneous Costs of Operation
Dated: _____ 3/9/70 _____

1. HUMBLE assumes responsibility for and will bear the cost of the following:

A. Licenses

HUMBLE agrees to make application and payment to the proper authorities for all business licenses and permits which may be required with respect to the business or operations conducted upon the premises, except as provided in Section II–A hereof.

B. Utilities

HUMBLE will pay the cost of public utilities furnished by HUMBLE to the premises, including electricity, water, and heating and cooling fuel.

C. Workmen's Compensation

HUMBLE will cover the Workmen's Compensation liability arising out of the operation of the service station at no cost to the Manager, and will furnish to the Manager the required notice which Manager shall keep posted at the premises at all times.

D. Public Liability—Operation of the Service Station and Non-owned Vehicles

HUMBLE will provide, at no cost to the Manager, except as set forth below in this Section 1–D and in Section II–D hereof, public liability insurance protecting the Manager and other station personnel against claims of customers and the public arising out of the operation of the station. A certificate of insurance will be issued to the Manager for the following limits:

| | | |
|---|---|---|
| Bodily Injury | $200,000 | one person |
| | $200,000 | two or more persons each accident |
| Property Damage | $200,000 | each accident |

This insurance covers:

(1) accidents occurring on or about the service station premises;

(2) accidents occurring away from the service station which are allegedly due to faulty service work, or to faulty or contaminated products;

(3) accidents occurring away from the service station which are due to the operation of non-owned vehicles by the Manager or other station personnel in the business of the service station. "Non-owned vehicles" include customers' cars but exclude vehicles owned or hired by the Manager or by any member of his household.

NOTE: This insurance does not cover claims arising from the use of motor vehicles owned or hired by the Manager or by any member of his household. Such vehicles shall be insured by the Manager pursuant to Section II–E hereof.

II. Manager assumes responsibility for and will bear the cost of the following:

A. Licenses

Manager agrees to make application and payment to the proper authorities for all business licenses and permits which may be required with respect to his resale of products and accessories purchased by him from HUMBLE and others, in addition to those business licenses and permits to be obtained by HUMBLE pursuant to Section I–A hereof.

### B. Supplies

Manager shall provide all supplies satisfactory to HUMBLE to properly operate the service station, including cleaning and rest room supplies and items for service work.

### C. Telephone

Manager shall pay all telephone charges for any telephone(s) installed upon the premises, and all charges for telephone directory advertising taken at his request. Each telephone installed upon the premises shall be listed in the telephone directory in accordance with HUMBLE'S instructions. Telephone numbers assigned to the station may not be transferred by the Manager to any other premises, nor may any listing be cancelled by the Manager notwithstanding any termination of this Agreement; provided, that the Manager's responsibility hereunder for telephone charges cease upon his payment of all telephone charges and directory advertising charges for which he is responsible under the terms of this Agreement.

### D. First $50.00 of Payments for Loss of or Damage to Customers' Cars and Other Property of Customers

With respect to claims for loss of or damage to customers' cars or other property while in the cars, custody or control of the Manager or station personnel (either on or away from the station premises), or allegedly due to faulty service work, or to faulty or contaminated products, the following provisions shall apply: Upon Manager's receipt of notice that HUMBLE or its insurance carrier under Section I–D hereof has paid any such claim, Manager shall promptly reimburse HUMBLE, for its own account or that of its insurance carrier, as the case may be, up to but not exceeding the first $50.00 of each such payment.

### E. Automobile Liability—Manager's Vehicles

Manager shall provide automobile liability insurance to cover all vehicles owned or hired by him or by any member of his household, which are used in the operation of the service station. Such insurance shall include HUMBLE as a Named Insured and shall be written for limits of not less than:

| Bodily Injury | $ 50,000 | one person |
| | $100,000 | two or more persons each accident |
| Property Damage | $ 5,000 | each accident |

Manager shall furnish HUMBLE, at its address stated in the Agreement, with a certificate as evidence that the insurance is in effect and that HUMBLE has been included as a Named Insured.

Manager shall not authorize or permit the use in the station's business of vehicles owned by other station personnel or members of their respective households, unless and until such vehicles are insured in accordance with the above stated requirements.

NOTE: The Manager is not required to provide automobile non-ownership liability coverage on customers' cars or other vehicles not owned or hired by the Manager or any member of his household, as such coverage is provided by HUMBLE pursuant to Section I–D hereof.

### F. Other Responsibilities

Manager shall determine his need for commercial insurance protection for damage to or loss of any personal property, including tools, equipment or merchandise owned by Manager.

### G. Other Business Activities of Manager

The Agreement to which this Schedule "C" is attached does not contemplate that the Manager shall engage in any business at HUMBLE'S service station premises other than a retail service station business. For purposes of clarification, and not by way of limitation, it is agreed that the operation of an automobile or truck parking lot or garage is not to be considered a part of the service station business. In the event that, with HUMBLE'S prior written consent, the Manager does engage in such other business, a separate agreement shall be executed by the parties, under which the Manager shall assume full responsibility for all claims for injury to or death of persons, and for

damage to or loss of property, which may arise out of the operation of such other business, and the Manager alone shall determine his need for commercial insurance protection with respect thereto.

H. Reports of Accidents, Claims and Unusual Occurrences

Manager shall report promptly to HUMBLE, in accordance with HUMBLE'S instructions, every accident, or other occurrence, and each claim, demand or legal process arising out of the operation of the service station that is covered by Workmen's Compensation and by Public Liability insurance as provided in Section I–C and D hereof.

Manager shall also make (or cause to be made) a prompt report, in writing, to his insurance carrier (or to the insurance carrier of other station personnel) pursuant to Section II–E hereof, with respect to every accident, or other occurrence, and each claim, demand or legal process arising out of the operation of vehicles owned or hired by him or other station personnel, or by any member(s) of their respective households, which are used in the operation of the service station, such report to be made whether or not the accident out of which the claim arose occurred in the course of the station's business. Manager shall promptly furnish HUMBLE with a copy of said report, as HUMBLE is to be included as a Named Insured thereunder.

(s) E. C. King 
Witness

(s) Guy E. Benitez 
Manager