Robert JOHNSON, d/b/a 62nd & York
Service Center, Inc., Plaintiff,

v.

MOBIL OIL CORPORATION and Station
Managers, Inc., Defendants.

No. 82 Civ. 6056 (LBS).

United States District Court,
S.D. New York.

Dec. 10, 1982.

Reisman, Peirez & Reisman, Garden City, N.Y., for plaintiff; David Peirez, Brian Tanenbaum, Garden City, of counsel.

Donovan Leisure Newton & Irvine, for defendants; Kenneth E. Newman, Gary S. Jacobson, Gregory S. Mertz, New York City, of counsel.

OPINION

SAND, District Judge.

Plaintiff Robert Johnson has operated a Mobil Oil Corporation (Mobil) full-service gasoline station in New York City from 1972 to the present. On September 9, 1982, defendant Station Managers, Inc. (SMI), a wholly-owned Mobil subsidiary, notified Johnson that it intended to terminate its business relationship with him pursuant to the contract between the parties. SMI asked that Johnson vacate the station by September 15, 1982.

Johnson now seeks to enjoin SMI and Mobil from taking any further actions to remove him as the operator of the service station on the grounds that they have failed to comply with the requirements of the Petroleum Marketing Practices Act ("PMPA" or the "Act"), 15 U.S.C. Secs. 2801–2841, and the New York motor fuel franchise act, New York General Business Law, Secs. 199–a through 199–d (McKinney Supp.1981).[1]

The PMPA, as well as its state law counterpart, provides procedural and substantive protections to franchised service station operators, including notice of termination and termination only for cause. Defendants have filed a cross-motion for partial summary judgment with respect to plaintiff's claims under the PMPA and the New York franchise act. Defendants also seek a declaration that plaintiff's termination was lawful and an injunction requiring him to vacate the station.

---

**1.** Plaintiff also alleges violations of the Sherman Act, 15 U.S.C. Sec. 1. The motions before the Court address only the question of preliminary injunctive relief under the PMPA and the comparable state franchise act. We do not, therefore, deal with plaintiff's antitrust damage claims at this time in light of the agreed limited scope of the proceedings conducted herein and the absence of any motion directed to these claims.

The current contract between Johnson and SMI is terminable at the will of either party at any time. Defendants' position, quite simply, is that the relationship between Johnson and SMI is governed by the strict terms of the contract. According to defendants, Johnson is an employee of SMI with regard to the sale of motor fuel, not an independent franchisee, and therefore does not qualify for the added protections of the PMPA and the New York franchise act. Plaintiff contends, by contrast, that his status with respect to SMI and Mobil is that of an independent businessman and franchisee, entitled to the full procedural and substantive protections of both the federal and state franchise laws.

At the request of the plaintiff and with defendants' consent an evidentiary hearing was held before the Court limited to the question of the applicability of the PMPA and the New York franchise act to this case. The parties agreed that on these issues the hearing and findings of the Court would be conclusive for all purposes in their litigation, i.e., that they would not be limited to the pending motions for preliminary or summary relief. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### Facts

The plaintiff, Robert Johnson, has operated a Mobil service station located at 62nd and York Avenue in New York City since 1972. The station is one of the largest and highest-volume Mobil stations in the area and is considered by Mobil to be one of its "model" stations. The business relationship between Johnson and the defendants during this period has been governed by three contracts, signed in 1972, 1974 and 1980 respectively. The parties to each of these contracts were Johnson and Station Managers, Inc., a wholly-owned Mobil subsidiary. Of the over 300 dealer-operated stations in New York City, only three are operated as SMI stations.

Under the terms of the 1980 contract, Johnson is paid a fixed monthly salary of $600. He receives in addition a monthly commission of ½ cent per gallon based on the volume of motor fuel sold in excess of 60,000 gallons per month.[2] Johnson's commission is based solely on volume, and does not vary with motor fuel price, which is set by SMI.

Plaintiff also operates a full-service automotive repair business at the station pursuant to the contract. The equipment necessary to operate the repair service is owned by Mobil and loaned to Johnson without charge in accordance with an Equipment Loan Agreement. Tires, batteries and other accessories are delivered to Johnson by Mobil without charge for sale to the public under the Mobil trademark. Johnson receives a commission on the sale of these items pursuant to a number of agreements with SMI entered into between 1972 and the present.

Johnson is responsible for hiring all employees necessary to operate both the motor fuel and repair aspects of the service station. He sets their salaries and determines their hours of work. Under the contract, Mobil furnishes Johnson with a "labor budget," which is its estimate of the wages necessary to operate the motor fuel sales aspects of the station's operation. All expenditures for personnel that exceed this budget must be furnished by Johnson. All personnel working at the station are SMI employees in the sense that SMI issues the salary checks for all employees, including Johnson. It withholds all federal, state and local taxes and social security, and pays workmen's compensation premiums. Johnson reimburses SMI for all employee salary payments, including taxes and fringe benefits, to the extent they exceed the labor budget.

Each day Johnson remits to Mobil an amount in accordance with the previous day's receipts from the sale of motor fuel.

---

2. This salary plus commission arrangement has remained essentially unchanged since 1974 (subject to a minimum salary guarantee of $671.67 pursuant to an agreement entered into between the parties in October, 1975).

Cash proceeds are remitted in the form of a certified check drawn on Johnson's own business account. Credit slips are remitted to reflect sales made by Mobil credit cards.

Mobil determines the grades of motor fuel that will be sold at the station and the price at which they will be sold. All motor fuel sales taxes are collected by Johnson as part of the gasoline sales price and remitted to Mobil. Mobil then remits the tax to the proper taxing authority.

With respect to the maintenance of the station, Mobil pays for general restroom supplies, station supplies such as paint, postage and stationery, and all utilities; Johnson selects the suppliers. Daily cash shortages, shortages for product variation, and "runaways" (where a customer drives off without paying for gasoline) are, as a rule, reimbursed by Mobil. In some instances Johnson absorbs such losses. Johnson is responsible for routine maintenance of station equipment. Mobil bears the cost of major equipment repairs and maintenance.

Johnson reports all SMI income as salaried income on his tax returns. He reports income from the repair aspects of the station's operation as independent business income. All unreimbursed expenses are deducted by him as business losses.

### Discussion

It is clear that Johnson's status with respect to Mobil and SMI is of a hybrid nature, not easily classified as either that of an employee or an independent businessman. The first question we must address, therefore, is whether a person of Johnson's status—regardless of the label we attach to it—was meant to be afforded the benefits and protections of the PMPA.

The Second Circuit has recently instructed us that in interpreting the scope and applicability of the PMPA, the "starting point" must be the language of the statute itself. *Checkrite Petroleum, Inc. v. Amoco Oil Co.,* 678 F.2d 5, 7 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 74, 74 L.Ed.2d 73 (1982) (citing *Lewis v. United States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980)). The statute provides, in relevant part, that:

The term 'franchisee' means a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

15 U.S.C. Sec. 2801(4). The statute provides further that "[t]he term 'retailer' means any person who purchases motor fuel for the sale to the general public for ultimate consumption." 15 U.S.C. Sec. 2801(7). The term "distributor" includes any person who "receives motor fuel on consignment" but not if such person "is an employee of, or merely serves as a common carrier providing transportation services for [the] supplier." 15 U.S.C. Sec. 2801(6).

The defendants argue that Johnson fails to fall within the plain language of the statute. First, they argue that in order to be a franchisee entitled to the protection of the Act, the plaintiff must be either a retailer or a distributor as defined in the Act. Johnson is not a retailer, Mobil argues, because he does not purchase motor fuel for sale to the public. Johnson merely remits to Mobil the retail proceeds from the prior day's sale of motor fuel. Nor is Johnson a distributor under the Act, according to Mobil, because he does not receive motor fuel on consignment and because he is an employee expressly excluded from coverage under the Act. Mobil relies on *Checkrite* for the proposition that where the plaintiff fails to satisfy these "unambiguous statutory definition[s] of 'franchisee,' " 678 F.2d at 8, the Act does not apply.

The plaintiff argues that he is a retailer under the Act because he does in fact "purchase" motor fuel for sale to the public on a credit basis. According to the plaintiff, the remitting each day of an amount equal to the prior day's retail gasoline sales is simply a variation of the "load-to-load" credit purchase arrangement Mobil maintains with other independent dealers. Under the load-to-load plan, an independent dealer pays Mobil for each load when the next load is delivered.

The testimony presented at the hearing makes clear, however, that Johnson's arrangement differs quite significantly from a load-to-load arrangement or any other credit arrangement Mobil maintains with its dealers. Dealers must pay for motor fuel on a C.O.D. basis or when the next load is delivered, regardless of how much fuel has been sold in the intervening period. The price of each load is a wholesale "wagonload" price. To operate under a Mobil credit arrangement, dealers must arrange for the posting of sufficient security or property liens.

Johnson, by contrast, posts no security. He pays Mobil daily, based on the retail receipts of the prior day, regardless of the volume of deliveries made. The amount Johnson pays Mobil is based strictly on the retail sales price of the gasoline established by Mobil, and is wholly unrelated to the wholesale prices charged other non-SMI dealers. Indeed, Johnson admitted at the hearing that he was unaware of the current wholesale selling price of gasoline in the New York City area. We find that Johnson does not, within the meaning of the PMPA, "purchase" gasoline for resale to the public. He does not, therefore, fall under the literal definition of "retailer" as defined in the Act.

.Nor does Johnson qualify as a consignment "distributor" under the Act, and neither party contends otherwise. He has no formal consignment relation with SMI or Mobil as required by Sec. 2801(6)(B). Moreover, the legislative history makes clear that in defining a "distributor" who operates under a consignment, Congress had in mind an independent middleman acting as a jobber, not a dealer selling to the public at retail. *See, e.g.,* S.Rep. No. 95–731, 95th Cong., 2nd Sess. 30–31, *reprinted in,* 1978 U.S.Code Cong. & Ad.News 873, 888–89; 123 Cong.Rec. H10384 (April 5, 1977) (remarks of Rep. Brown); *Id.* at H10386 (remarks of Rep. Dingell).

For all these reasons, plaintiff fails to qualify as a franchisee under the plain language of the PMPA, which pursuant to *Checkrite* is controlling. Moreover, even under a broader analysis that looks to the totality of the business relationship, we find Johnson unprotected by the PMPA.

In arguing that he qualifies for protection under the Act, plaintiff relies on *Roberts v. Exxon Corp.,* 427 F.Supp. 389 (W.D. La.1977) and *Simpson v. Union Oil Co.,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), two pre-PMPA cases dealing with the scope of the Sherman Act, 15 U.S.C. Sec. 1. In *Simpson,* the plaintiff was a service station operator who sold motor fuel to the public on consignment for Union Oil. Union set the price of the gasoline and retained title until sold to the public. Despite the fact that the plaintiff did not set the price and did not technically "purchase" the motor fuel for resale to the public, the Court held that he had enough other indicia of an independent dealer and retail businessman to have standing to bring a price-fixing claim under the Sherman Act. Similarly, in *Roberts,* the plaintiff sold gasoline and petroleum products on consignment to the public under the Exxon trademark. As in *Simpson,* Exxon fixed the price of the gasoline and retained title. And, as in *Simpson,* the court held that the plaintiff had enough of the other indicia of an independent businessman to bring suit under the Sherman Act for price fixing.

Despite the fact that these cases predate the PMPA, they cannot be simply brushed aside as inapplicable, as Mobil suggests. The argument can be made that Congress would not have intended to exclude from the protection of the PMPA one who received gasoline on consignment and who was considered an independent dealer under *Simpson* and its progeny for purposes of bringing a price-fixing claim with respect to the sale of motor fuel merely because such a person did not technically purchase motor fuel for resale to the public. Moreover, it is far from clear that Congress meant to exclude all informal consignment relationships from the protections of the PMPA.

But what does seem clear from the legislative history is that in enacting the PMPA, Congress intended to protect motor fuel

marketers and dealers who have enough of the indicia of entrepreneurial responsibility and risk to be considered independent dealers and businessmen. At the same time, the statutory language and congressional debates also make clear that persons who act merely as employees are not entitled to the protections of the Act. Just as in the antitrust context, the dispositive question under an analysis broader than a literal reading of the statutory language is whether, on all the facts and circumstances, the plaintiff is an employee or an independent businessman.

Employing such an analysis, we find that Johnson's business relationship with Mobil and SMI is not of the type Congress intended to protect in enacting the PMPA. Johnson does not lease the station premises as do most independent dealers. Unlike the station operator in *Roberts v. Exxon Corp.,* *supra,* Johnson receives a guaranteed minimum income from Mobil regardless of the amount of gasoline or motor fuel products he sells. As a result, Johnson is considerably insulated from fluctuations in market demand due to changes in price. In *Roberts,* by contrast, the court noted that "If the prices were not competitive and plaintiff . . . lost money, it was his loss; there was no minimum income guaranteed to him." 427 F.Supp. at 391. Moreover, unlike the plaintiff in *Simpson v. Union Oil Co.,* 377 U.S. at 20, 84 S.Ct. at 1056, Johnson's commission on motor fuel sales is not pegged to the retail selling price, as is usually the case with an independent commissioned dealer. *See also Roberts v. Exxon Corp.,* 427 F.Supp. at 394–95 (Addendum I). Indeed, Johnson's commission on gasoline has remained unchanged since 1974, despite all that has happened in the industry since that date. His commission is affected by price fluctuations only to the extent, if any, that they impact on sales volume. He derives no benefit and risks no loss with respect to gasoline inventory on hand as the retail price rises or falls. Mobil also pays all employee salaries, taxes, and workmen's compensation insofar as such employees participate in the sale of motor fuel.

Under these facts, we find Johnson's business relationship with Mobil and SMI to be more like that of the plaintiffs in *Hardwick v. Nu-Way Oil Co.,* 589 F.2d 806 (5th Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979), *Call Carl, Inc. v. BP Oil Corp.,* 554 F.2d 623 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977), and *Goldinger v. Boron Oil Co.,* 375 F.Supp. 400 (W.D.Pa.1974), *aff'd mem.,* 511 F.2d 1393 (3rd Cir.1975).

In each of these cases the court focused on the lack of the financial risk imposed on the plaintiffs in the operation of their stations to find, despite significant indicia of independent business status, that they were employees for purposes of bringing a Sherman Act price-fixing claim. In *Hardwick,* for example, the court concentrated on the fact that the defendant retained title to the gasoline until it was sold and that the plaintiff's compensation was unaffected by pricing decisions to support a finding that the plaintiff lacked the economic risks inherent in the status of an independent businessman. 589 F.2d at 810–11. In *Call Carl,* the court looked to the fact that the defendant paid the costs of operating the service station, was responsible for accidental losses of gasoline on the station premises, and paid all social security, unemployment and workmen's compensation for all employees, including the plaintiff, to arrive at a similar result. 554 F.2d at 627–28. And in *Goldinger,* the court emphasized the fact that the plaintiff's commission was unrelated to the retail price of gasoline and that he was provided with the station premises and heavy equipment necessary to perform repair services without charge in finding that the defendant continued to bear the major risks of the marketplace. 373 F.Supp. at 405–09.

In the case at bar, just as in *Hardwick, Call Carl,* and *Goldinger,* we find that, despite significant indicia of independent business status, the plaintiff does not bear the quantum of marketplace risk in operating his station we think Congress deemed necessary to characterize him as an independent dealer and franchisee for purposes of the PMPA.

In arguing that he is entitled to independent dealer/franchisee status, plaintiff places great reliance on the fact that he exercises significant control over the day-to-day operation of the station, that he hires, fires and establishes the salaries of all employees, and that he bears some of the risk of cash shortages and maintenance costs. He also relies on the fact that he is required under the SMI contract to purchase liability insurance for the station at his own expense. Yet the existence of significant control of the operation of the station is in no sense inconsistent with his status as a managerial employee responsible for overseeing the operation of one of Mobil's largest full-service stations. Nor does the fact that Johnson shares certain costs of doing business with Mobil necessarily support his contention that he is an independent businessman with respect to the sale of motor fuel. The testimony at the evidentiary hearing made clear that the plaintiff is an independent businessman with respect to his repair service and that, as a result, he is expected to bear his proportionate share of the costs of that operation. The testimony also made clear, however, that Mobil was wholly responsible for that part of the station's operation related to the sale of motor fuel. The fact that plaintiff is an independent businessman with regard to one aspect of the station's operation does not necessarily entitle him to the protections of the PMPA, which protects franchisees only with respect to the sale of motor fuel. Although located at the same site, we think it proper to consider Johnson's repair business separate from Mobil's retail motor fuel operation for purposes of determining the applicability of the PMPA. Cf. Hardwick v. Nu-Way Oil Co., supra (service station attendant, who operated drive-in grocery in conjunction with the sale of motor fuel, not considered independent businessman for purposes of bringing Sherman Act price-fixing claim).

For all of the above reasons, we find that plaintiff has neither the economic independence nor bears the level of marketplace risk that Congress had in mind in defining the scope of franchise protection under the PMPA. For this reason, plaintiff fails to qualify as a franchisee even under a broader analysis that looks to the totality of the business relationship.

We also must reject the plaintiff's argument that even if he is unprotected by the PMPA, he nevertheless is entitled to the protections of the New York motor fuel franchise act. We note, as an initial matter, that unlike a number of other states, New York has no general franchise statute; the New York franchise act protects only those who market motor fuel. Therefore, to the extent Johnson seeks protection for his independently-operated repair service, he is without a statutory remedy under New York law.

With respect to the sale of motor fuel, plaintiff argues that because the New York act does not define a station operator as one who purchases motor fuel for resale to the public, its coverage is broader than the PMPA. The New York act requires only that a person be "engaged in the retail sale of motor fuels." New York General Business Law Sec. 199–a (McKinney Supp.1981).

The PMPA expressly provides that to the extent it applies to the termination or non-renewal of a franchise relationship, comparable state laws applying to termination or nonrenewal are preempted. 15 U.S.C. Sec. 2806(a); see Munno v. Amoco Oil Co., 488 F.Supp. 1114, 1115 n. 1 (D.Conn.1980); Lyons v. Mobil Oil Co., 526 F.Supp. 961, 962 (D.Conn.1981); Meyer v. Amerada Hess Corp., 541 F.Supp. 321, 322 (D.New Jersey 1982). To the extent the PMPA does not apply, however, it follows that state laws are not preempted, for in this instance state and federal law would not be in conflict. See Ted's Tire Service, Inc. v. Chevron U.S.A. Inc., 470 F.Supp. 163, 165 (D.Conn. 1979) ("The federal Act does not preempt all state laws regulating petroleum franchisees; rather it merely supplants those provisions which are different from the PMPA.") See also Lasko v. Consumers Petroleum of Connecticut, Inc., 547 F.Supp. 211 (D.Conn.1981); Van v. Mobil Oil Corp., 515 F.Supp. 487 (E.D.Wis.1981). It is arguable, therefore, that the statutory language

of the New York act indicates an intention on the part of the New York legislature to provide protection to a class of persons outside the coverage of the PMPA.

Even if the New York statute was intended to have a broader scope than the PMPA, we do not think it reaches so far as to protect the plaintiff in this case. For all the reasons discussed above with regard to the PMPA, we find that Johnson does not possess the characteristics of economic independence and risk-taking that are a prerequisite to protection under the New York motor fuel franchise act.

### Conclusion

We find that the plaintiff is not a franchisee and is therefore not entitled to the protections of either the PMPA or the New York motor fuel franchise act. Accordingly, plaintiff's motion for preliminary and permanent injunctive relief is denied, and Counts I, II and IV of plaintiff's complaint are dismissed. Defendants' counterclaim seeking a declaration that Johnson's termination was lawful and a mandatory injunction requiring him to vacate the 62nd and York station forthwith is granted.