Chatila v. Aranco Oil Corp.          CV-02-290-JD  03/13/03
               UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Ahmad Chatila and
Amherst Citgo, Inc.

      v.                              Civil No. 02-290-JD
                                      Opinion No. 2003 DNH 039
Aranco Oil Corporation


                         O R D E R


     The plaintiffs, Ahmad Chatila and Amherst Citgo, Inc., bring

suit against Aranco Oil Corporation, alleging claims under the

Petroleum Marketing Protection Act ("PMPA"), 15 U.S.C. § 2801, et

seq., and related state law claims, arising from Aranco's

decision to terminate Amherst Citgo's lease.  Aranco moves for

summary judgment, contending that the PMPA does not cover the

relationship between it and the plaintiffs and asking that the

court decline supplemental jurisdiction as to the state claims.

Aranco also challenges that part of the plaintiffs' PMPA claim

which alleges anti-Arab discrimination.  The plaintiffs object.


                      Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background[1]

Ahmad Chatila operated Amherst Citgo, Inc., a gas station and convenience store, in Amherst, New Hampshire, beginning in 1994.[2] Chatila, on behalf of Amherst Citgo, leased the station and store property from Aranco, a gasoline distributor in New Hampshire. Brijesh Patel also signed the 2001 lease on behalf of Amherst Citgo.

The present lease began on February 5, 2001, and was to

---

[1]Only Aranco provided a factual statement as required by Local Rule 7.2(b). Therefore the facts provided by Aranco are deemed admitted for purposes of summary judgment. LR 7.2(b)(2).

[2]The plaintiffs do not differentiate between Chatila and Amherst Citgo, Inc., the entity Chatila formed to operate the station and convenience store. For purposes of the present motion, the legal distinctions between them are not at issue.

continue for either one or three years, depending on the circumstances at the inception of the new lease. Under the terms of the lease, Amherst Citgo operated as an independent business, and was solely responsible for the store. Neither Chatila nor Amherst Citgo purchased or owned the gasoline pumped at the station. Instead, Aranco owned the pumps and tanks, supplied the gasoline to the pumps, and set the price for gasoline.

When customers bought gasoline, the money and credit card payments went to Aranco's account, not to Chatila or Amherst Citgo. Amherst Citgo paid rent of $700.00 each week to Aranco for the leased space. Aranco paid Chatila a commission, called a pumper fee, of $0.03 per gallon of regular unleaded gasoline pumped and $0.02 for each gallon of other petroleum products sold. Chatila also received a credit against rent of $0.02 for each gallon of gasoline and other products. If less than 15,000 gallons were pumped in a week, Chatila would owe an extra $200.00 in rent for that week.

Chatila was required to obtain specified insurance coverage and a fidelity bond. The lease recommended but did not require certain hours of operation and specified other obligations and procedures. The lease incorporated the PMPA with respect to the duration of the lease and provisions for termination.

In 2000, Chatila began to look for potential buyers for

3

Amherst Citgo. Brijesh Patel paid a deposit of $1000 for an option to buy the business for $110,000. Under its terms, Aranco had to approve any assignment of the lease. Aranco approved Patel as a co-tenant but refused to lease the station and store to him until he established a track record there. Patel never worked in the business and lost interest in the sale. Another potential buyer, Kenneth Leith, was approved by Aranco after a period of time, but he too lost interest. Aranco terminated the lease with Amherst Citgo in February of 2002.

## Discussion

The plaintiffs allege that Aranco terminated the lease in violation of the PMPA because the lease provided a term of three years from February of 2001 and, even if the lease was for a one-year trial period, Aranco lacked grounds not to renew the lease. The plaintiffs further allege that Aranco's decision to terminate the lease was because of Chatila's Arab background and Aranco's belief that a backlash against Arabs existed after September 11, 2001. The plaintiffs also bring state statutory claims under N.H. Rev. Stat. Ann. ("RSA") Chapter 339-C and RSA 540:1 and common law claims of breach of contract and of the implied covenant of good faith and fair dealing. For purposes of summary

4

judgment, Aranco contends that the PMPA does not apply and that the plaintiffs cannot prove anti-Arab discrimination.

A.  Application of PMPA

"The PMPA, 15 U.S.C. §§ 2801-2841, governs franchise arrangements for the sale, consignment, or distribution of motor fuel."  C.K. Smith & Co., Inc. v. Motiva Enters. LLC, 269 F.3d 70, 73 (1st Cir. 2001).  In particular, the PMPA regulates the termination and non-renewal of franchise relationships.  Id. Under the PMPA, a franchise relationship can only exist between a refiner and a distributor, a refiner and a retailer, a distributor and another distributor, or a distributor and a retailer of motor fuel.  15 U.S.C. §§ 2801(1)(A) & 2801(2); see also C.K. Smith, 269 F.3d at 74.

In this case, it is undisputed that Aranco is a distributor within the meaning of the PMPA.  The plaintiffs assert that they are also distributors under the Act.  Aranco contends that Chatila and Amherst Citgo do not meet the PMPA definition of distributor.  The court agrees with Aranco that incorporation by reference of provisions of the PMPA in the lease does not determine whether a cause of action exists under the PMPA.  See, e.g., Sigmon v. Widenhouse Serv., Inc., 638 F. Supp. 808, 813 (M.D.N.C. 1986).

5

"Distributor" is defined in the PMPA as:

any person, including any affiliate of such person, who-

(A) purchases motor fuel for sale, consignment, or distribution to another; or

(B) receives motor fuel on consignment for consignment or distribution to his own motor fuel accounts or to accounts of his supplier, but shall not include a person who is an employee of, or merely serves as a common carrier providing transportation service for, such supplier.

§ 2801(6). The plaintiffs argue that they are distributors within the meaning of § 2801(6)(B) because they received motor fuel on consignment for distribution. Aranco argues that because Amherst Citgo sells Aranco's gasoline to the retail public, rather than distributing the gasoline at wholesale, the plaintiffs are not distributors within the meaning of § 2801(6)(B).

There appears to be no dispute that Amherst Citgo does not purchase fuel from Aranco, but instead receives fuel from Aranco on consignment. See, e.g., Black's Law Dictionary 307 (6th ed. 1990) (defining consign as: "To deposit with another to be sold, disposed of, or called for, whereby title does not pass until there is action of consignee indicating sale."). It is also undisputed that Aranco's gasoline is sold to the public at the Amherst Citgo station. The issue, therefore, is whether the sale

6

of gasoline at the station is "distribution" within the meaning of § 2801(6)(B).

Because the PMPA is a remedial statute, it is entitled to a "relatively expansive construction," although not beyond the scope of "its original language and purpose." Seahorse Marine Supplies v. P. R. Sun Oil, 295 F.3d 68, 73-4 (1st Cir. 2002) (internal quotations omitted). Other courts have relied on the legislative history of the PMPA to conclude that Congress intended "distributor" in § 2801(6)(B) to be limited to the wholesale context. See, e.g., Farm Stores, Inc. v. Texaco, Inc., 763 F.2d 1335, 1341 n.5 (11th Cir. 1985); Checkrite Petroleum, Inc. v. Amoco Oil Co., 678 F.2d 5, 8-9 (2d Cir. 1982); Karak v. Bursaw Oil Corp., 147 F. Supp. 2d 9, 13 n.4 (D. Mass. 2001); Johnson v. Mobil Oil Corp., 553 F. Supp. 195, 198 (S.D.N.Y. 1982). This court does not find the reasoning in those cases particularly persuasive, but instead relies upon a close reading of the statute as a whole.

The plain language of the statute rules out the interpretation of "distributor" urged by the plaintiffs. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" United States v. Cortes-Claudio, 312

7

F.3d 17, 21 (1st Cir. 2002) (quoting <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001)); <u>see also</u> <u>Campanale & Sons, Inc. v. Evans</u>, 311 F.3d 109, 118 (1st Cir. 2002). "Where the Legislature uses the same words in several sections which concern the same subject matter, the words must be presumed to have been used with the same meaning in each section." <u>Med. Prof'l Mut. Ins. Co. v. Breon Labs., Inc.</u>, 141 F.3d 372, 377 (1st Cir. 1998) (internal quotation omitted); <u>see also</u> <u>United States v. Nippon Paper Indus. Co., LTD</u>, 109 F.3d 1, 4-5 (1st Cir. 1997).

Congress defined "distributor" in § 2801(6) in two ways: (1) a person who purchases motor fuel for sale, consignment, or distribution, and (2) a person who receives fuel on consignment for consignment or distribution. In the first definition, involving a purchase of fuel, distribution and sale of fuel are distinct operations. In the consignment context, however, the fuel may be received for consignment or distribution, but sale to others is not included in the definition. Because "sale" is included for purposes of purchase and not for purposes of consignment, its omission is significant. "Distribution," as used in the consignment context, cannot be interpreted to include "sale" because such an interpretation would render "sale," as used in the purchase context, superfluous. Distribution must be interpreted to mean the same thing in each context; that is,

8

distribution of fuel in ways that do not involve sale.

Under the plain meaning of § 2801(6)(B), a person is not a distributor if the person receives fuel on consignment for retail sale. It is undisputed that the plaintiffs did receive fuel from Aranco for retail sale. Therefore, the plaintiffs are not "distributors" within the meaning of the PMPA.[3]

B.  Supplemental Jurisdiction

The basis of subject matter jurisdiction in this case was the existence of a federal question, raised by the PMPA claim. 28 U.S.C. § 1331. Subject matter jurisdiction for the state law claims is based on supplemental jurisdiction under 28 U.S.C. § 1367. When federal claims, which were the basis of subject matter jurisdiction, have been dismissed, the court is obligated to reassess the jurisdictional basis for the state claims. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

"The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Courts generally decline to exercise supplemental jurisdiction over state claims

_____

[3]Given the resolution of the PMPA claim, the court does not consider the plaintiffs' allegation of anti-Arab discrimination.

9

if the federal predicate is dismissed early in the litigation."
O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 273 (1st Cir.
2001). "Certainly, if the federal claims are dismissed before
trial, even though not unsubstantial in a jurisdictional sense,
the state claims should be dismissed as well." Camelio, 137 F.3d
at 672.

Therefore, the court declines supplemental jurisdiction as
to the state law claims in this case. Those claims are
dismissed, without prejudice, for lack of subject matter
jurisdiction.


Conclusion

For the foregoing reasons, the defendant's motion for
summary judgment (document no. 12) is granted. The state law
claims are dismissed without prejudice for lack of subject matter
jurisdiction. The clerk of court shall enter judgment
accordingly, and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 13, 2003

cc: William E. Aivalikles, Esquire
    Andrew R. Schulman, Esquire

10