**Frank N. MERLINO, Robert D'Orazio, Mandine Enterprises, Ltd., and Merora Enterprises, Ltd., Plaintiffs,**

v.

**GETTY PETROLEUM CORP., Power Test Corp. (a division of Getty Petroleum Corp.), Howard Stockfield, and Stockfield & Fixler, Defendants.**

**No. 89 Civ. 0410 (RWS).**

United States District Court,
S.D. New York.

July 6, 1989.

The Jacob D. Fuchsberg Law Firm, New York City, for plaintiffs; Alan L. Fuchsberg, Diane W. Bando, of counsel.

Del Gadio & White, Garden City, N.Y., for defendant Getty Petroleum Corp.; Robert G. Del Gadio, of counsel.

Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendants Howard F. Stockfield and Stockfield & Fixler; Peter C. Contino, Janice J. Digennaro, of counsel.

## OPINION

SWEET, District Judge.

Defendants Getty Petroleum Corp. ("Getty") and its division, Power Test Corp. ("Power Test") (collectively, the "Getty Defendants"), have moved under Rules 56 and 12(b)(1) and (6), Fed.R.Civ.P., to dismiss the complaint of Frank N. Merlino ("Merlino"), Robert D'Orazio ("D'Orazio"), Mandine Enterprises, Ltd. ("Mandine"), and Merora Enterprises, Ltd. ("Merora") (collectively, the "Plaintiffs") for failure of federal question jurisdiction under 28 U.S.C. § 1331. The Getty Defendants contend that the complaint's only federal cause of action—alleging violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*,—is inapplicable because none of the defendants is a refiner of motor fuel nor affiliated with a refiner of motor fuel, as the PMPA requires. Defendants Howard F. Stockfield ("Stockfield") and Stockfield & Fixler ("S&F") (collectively, the "Stockfield Defendants") have cross-moved under Rule 12(b)(1), Fed.R.Civ.P., for an order dismissing the state law legal malpractice cause of action against them for lack of subject matter jurisdiction. For the reasons set forth below, both motions are granted, and the complaint is dismissed.

*The Parties*

Mandine and Merora were New York corporations that owned several gas stations and convenience stores in New York state. Merlino and D'Orazio are New York residents who owned, respectively, sixty and forty percent of the shares of Mandine and Merora.

Getty is a Delaware corporation engaged in the wholesale and retail distribution of gasoline and other petroleum products through the "Getty" and "Power Test" trademarks. Getty maintains its principal place of business in Jericho, New York. Power Test is a division of Getty, having no independent legal existence.

Ciatto is a New York resident who sold the Plaintiffs a "Power Test" service station and convenience store located in Pat-

terson, New York (the "Patterson Power Test").

S&F is a law partnership consisting of Stockfield and Elliot H. Fixler, maintaining offices in Carmel, New York and New York, New York. S&F, through Stockfield, represented the Plaintiffs in their dealings with Getty.

*The Facts*

Prior to July 1985, Power Test's wholly-owned subsidiary, Power Test Distributors, Inc. ("Distributors"), distributed gasoline under the "Power Test" trademark to retail outlets identified as "Power Test" service stations. Distributors never was a refiner of gasoline, nor was its parent Power Test a refiner of gasoline.

In 1983, Texaco acquired Getty in a transaction that ultimately led to an $11 billion judgment against Texaco for interfering with Pennzoil's pre-existing contract to purchase Getty. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). On February 1, 1985, Texaco sold Getty's trademark, terminals, gasoline stations, and other marketing assets to Power Test. In that transaction, Power Test did not acquire any refineries or corporations owning refineries.

On July 11, 1985, Power Test changed its name to Getty. As presently constituted, Getty neither owns nor leases any refining facilities. The company buys its gasoline already refined on the open market, then markets it through retail gasoline outlets identified as either "Getty" or "Power Test" service stations. Getty distributes its "Power Test" products through its Power Test division, which is not a separate legal entity.

Although Getty does not refine crude oil into motor fuel, it tests the refined gasoline it purchases to determine whether the product meets its quality standards. Getty also adds detergent to the refined gasoline it purchases.

The Patterson Power Test always had operated under the "Power Test" trademark, and it continued to do so after Power Test changed its name to Getty. Ciatto owned the Patterson Power Test until September 15, 1986, when he retired and sold the business to the Plaintiffs for $177,000.

Merlino and D'Orazio began negotiating with Ciatto to buy the Patterson Power Test in June or July 1986. During the negotiations, Ciatto told Merlino and D'Orazio that he operated the business under a franchise from Getty, which owned the buildings and held a ninety-nine year lease on the property with eighty-nine years remaining. Ciatto explained that Getty would provide Merlino and D'Orazio an initial one-year lease, to be followed by three-year leases renewable indefinitely.

Also in June or July 1986, Merlino and D'Orazio met with Carol Griffin ("Griffin"), a Getty marketing representative whose area included the Patterson Power Test. Like Ciatto, Griffin allegedly told Merlino and D'Orazio that Getty held a ninety-nine year lease on the property and that it would offer them a one-year initial lease to be followed by three-year leases renewable indefinitely, unless Merlino and D'Orazio bought gas from suppliers other than Getty, failed to pay their rent, or neglected to perform other terms of the franchise agreement.

The sale closed on September 15, 1986. In December 1986, Merlino and D'Orazio learned from an unnamed Getty representative that Getty had only a ten-year lease that expired in 1987. They contacted Griffin about this, and she reassured them that Getty had a ninety-nine year lease. Upon further investigation, however, Griffin discovered that Getty in fact had a ten-year lease lasting only until 1987.

In April 1987, Merlino and D'Orazio notified Getty that they planned to bring claims for fraud, misrepresentation, and breach of contract against the company. In response, Getty began negotiating with Merlino and D'Orazio about providing them other service stations should Getty be unable to renew the Patterson Power Test lease.

On June 9, 1987, Getty notified Merlino and D'Orazio that it would not renew the Patterson Power Test franchise because Getty's lease on the underlying property

had expired. Mobil Oil corporation subsequently leased the property.

On August 28, 1987, Merlino and D'Orazio entered into an agreement with Getty by which Getty provided them three service stations and $27,000 in cash in return for a release relieving Getty from all claims arising out of the "Lease Agreement and Lessee Supply Contract dated September 15, 1986 and all other agreements or understandings related thereto, and all matters, acts or omissions occurring on said premises" (the "Release").

Merlino and D'Orazio allege that Getty assured them these stations would be as profitable as the Patterson Power Test, but refused to reveal its books and records to them. Merlino and D'Orazio began operating the first station, but it lost money. They later gave up that station and refused to take possession of the other two, and on January 20, 1988 cancelled the substitute franchise agreements.

Stockfield and S&F represented the Plaintiffs in negotiations concerning the Patterson Power Test, including the termination of that franchise and the negotiations for the three substitute franchise agreements. The Plaintiffs subsequently learned that Stockfield's failure to make certain filings made them liable for thousands of dollars of back sales taxes that Ciatto owed to New York State.

*Prior Proceedings*

On January 19, 1989, the Plaintiffs filed the present lawsuit, alleging eleven causes of action, including claims against the Getty defendants for rescission of the Release (Count I), violation of the PMPA (Count II), fraud and misrepresentation (Count III), deceptive trade practices (Count IV), breach of contract and of the covenant of good faith and fair dealing (Count V), and violation of section 687 of New York's General Business Law (Count VI), claims against Ciatto for fraud, misrepresentation, and rescission (Count VII), deceptive trade practices (Count VIII), indemnification (Count IX), and breach of contract (Count X), and claims against the Stockfield defendants for legal malpractice (Count XI). The Getty defendants and the Stockfield defendants have moved to dismiss the complaint for lack of subject matter jurisdiction.

*Defining a "Refiner" Under the PMPA*

For the PMPA to apply, the trademark at issue must be controlled by a refiner or an affiliate of a refiner. *See* 15 U.S.C. § 2801(1)(A); *Tolga Oil Corp. v. Nur-han, Inc.,* 668 F.Supp. 761, 762 (E.D.N.Y.1987). The PMPA provides:

The term franchise means any contract—

(i) between a refiner and a distributor,

(ii) between a refiner and a retailer,

(iii) between a distributor and another distributor, or

(iv) between a distributor and a retailer,

under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

15 U.S.C. § 2801(1)(A). The PMPA defines a "refiner" as "any person engaged in the refining of crude oil to produce motor fuel, and includes any affiliate of such person." 15 U.S.C. § 2801(5). The statute defines an "affiliate" as "any person who (other than by means of a franchise) controls, is controlled by, or is under common control with, any other person." 15 U.S.C. § 2801(15).

The Getty defendants have submitted an affidavit from Alvin A. Smith, the company's Senior Vice President and Chief Operating Officer, stating that "Getty, the owner of the Power Test trademark, has never been a refiner of gasoline or an affiliate with a refiner of gasoline." Smith Aff. ¶ 7. They also have cited two cases holding that the PMPA does not apply to the Power Test trademark. *See Blackwell v. Power Test Corp.,* 540 F.Supp. 802, 807 (D.N.J. 1981), *aff'd,* 688 F.2d 818 (3d Cir.1982) ("Since it is undisputed that the 'Power Test' trademark is not owned or controlled by a refiner, it is evident that the [PMPA] is not applicable to this action."); *Power*

*Test Petroleum Distribs., Inc. v. Zaltsman,* No. 83 Civ. 0296, slip op. (E.D.N.Y. Mar. 8, 1983) ("In a similar case, Judge Meanor in the District of New Jersey found that Power Test was not a 'refiner' of petroleum.... In the instant case defendant has failed to allege any facts that indicate either that Judge Meanor's well-reasoned opinion was wrong or that Power Test's status as a refiner has changed since the date of the *Blackwell* decision.").

Since *Blackwell* and *Zaltsman,* Power Test has acquired Getty's trademark and marketing operations and changed its name to Getty. However, these facts do not alter the courts' findings in those cases. Power Test did not acquire a refining operation or a corporation owning a refining operation in that transaction. Moreover, the trademark at issue here is "Power Test" not "Getty," so no issue arises regarding Getty's status before Texaco acquired it and sold some of its assets to Power Test.[1]

The Plaintiffs urge this court to look behind the statutory definition of a "franchise" and to apply the PMPA to Getty based upon the legislative history. They argue that "Power Test" is the sort of powerful trademark commanding strong consumer loyalty that led to the sorts of abuses Congress sought to combat when it enacted the PMPA. They contend further that the contract at issue here embodied the same terms Congress identified as distinguishing a franchise under the PMPA:

> The distinguishing characteristic of a branded lessee dealer is that he not only markets gasoline under the brand name of his supplying refiner but also leases the station he operates from the same refiner. This dual supplier-landlord relationship is somewhat unique among franchise agreements, and gives the refiner almost total economic control over the individual dealer. To further insure this control, most dealers are given only a one-year lease. Lacking the security of a long-term lease, the branded lessee dealer lacks the means to effectively re-

ject the suggestions of his supplying refiner without jeopardizing his business. *Problems of Small Retail Petroleum Marketers,* H.Rep. No. 94–1762, 94th Cong., 2d Sess., at 16 (1976) ("House Report").

As indicated by the facts here presented, large distributors like Power Test may present threats similar to those raised by large integrated oil companies. However, Congress failed to address that gap when it enacted the PMPA. In the House Report, the Committee noted that "[t]he petroleum industry can be divided into four separate parts which are most commonly identified as 'production,' 'transportation,' 'refining,' and 'marketing.'" House Report at 4. It described how the large oil companies' integration of these four parts gave them special power at the retail level: "Because of their integrated structure and the fact that they have traditionally realized most of their profits from production of crude oil, the large integrated refiners had already realized the profits they made on gasoline before it reached the marketing sector." *Id.* at 11. Congress also identified how the integrated oil companies' practices had begun to affect retailers like the Plaintiffs:

> [B]y closing their low volume and marginally profitable stations, refiners have substantially reduced the total number of gasoline outlets in this country.... [T]he forward integration of the large refiners not only provides the non-branded marketer with increased competition, but, more importantly, raises the possibility that the independent retailer will soon no longer be able to obtain gasoline from his traditional supplier.

*Id.* at 13.

Despite the problems Congress described in the legislative history, Congress failed to cast its net wider than refiners when it defined "franchise" in the PMPA. The statute's language is plain, and therefore should be construed strictly. *See Checkrite Petroleum, Inc. v. Amoco Oil Co.,* 678 F.2d 5, 8 (2d Cir.) ("Strict construction is

---

**1.** The Plaintiffs note that the PMPA's legislative history expressly identified Getty as a refiner. The trademark at issue here, however, is "Power Test," not "Getty." Moreover, Getty's status has changed significantly since 1976 when Congress passed the PMPA.

particularly appropriate where, as here, the statute in question [the PMPA] is in derogation of common law rights."), *cert. denied,* 459 U.S. 833, 103 S.Ct. 74, 74 L.Ed.2d 73 (1982).

The Plaintiffs also argue that Getty operates as a "de facto refiner" by virtue of its size and marketing practices, its quality control tests, and its detergent additives. However, Congress defined "refiner" in the PMPA as applying to "any person engaged in the refining of crude oil to produce motor oil." Under the Congressional definition, Power Test's size and marketing practices are irrelevant. Getty's practice of testing its fuel's quality or adding detergent fails to amount to "refining," as a matter of logic, definition, and legislative history. The House Report noted: "In its natural state, crude oil is commercially useless and must be processed or refined to form usable fuels, such as gasoline, jet fuel, diesel fuel, home heating oils, etc." House Report at 5. Its subsequent description of the nation's refining facilities demonstrates that Congress in no way considered quality control tests or detergent additives as part of the "refining process."

Because none of the defendants is a refiner, the PMPA is inapplicable, and the complaint's second cause of action must be dismissed.

*Pendent Jurisdiction*

The remaining ten causes of action assert claims under New York law. Because the complaint's sole federal claim has been dismissed at an early stage in the litigation, it is appropriate to dismiss the remaining state claims as well. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

*Conclusion*

For the reason set forth above, the motions are granted and the complaint is dismissed.

It is so ordered.