**DENISE PETROLEUM, INC., and DGN Petroleum Corp., Plaintiffs,**

v.

**OCEAN PETROLEUM, INC., The Coastal Corp. and Coastal Refining and Marketing, Inc., Defendants.**

No. CV 97–3857 (ADS).

United States District Court,
E.D. New York.

Jan. 8, 1999.

Reisman, Peirez, Reisman & Calica, L.L.P, Garden City, NY, (Joseph Capobianco, of counsel), for plaintiffs.

Del Gadio & Tomao, Uniondale, NY, (Peter J. Tomao, of counsel), for defendant Ocean Petroleum, Inc.

Krol & O'Connor, New York City (Igor Krol, of counsel), for defendants The Coastal Corp. and Coastal Refining & Marketing, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

On July 3, 1997 Denise Petroleum Inc. ("Denise Petroleum") and DGN Petroleum Corp. ("DGN") (collectively, the "plaintiffs") commenced this action pursuant to the Petroleum Marketing Practices Act ("PMPA") 15 U.S.C. § 2801 *et seq.* against Ocean Petroleum, Inc. ("Ocean"), the Coastal Corporation ("Coastal Corp.") and Coastal Refining and Marketing Inc. ("Coastal Refining") (collectively, the "Coastal defendants"). Denise Petroleum owns the real property and building located at 4815 Veterans Memorial Highway, Holbrook, New York where DGN operated a gas station. Coastal Corp. is a large energy concern that produces motor fuels and other petroleum products. Coastal Refining is a second-tier subsidiary of Coastal Corp. and markets their motor fuels and other products. Ocean is a company that distributed gasoline and other petroleum products to gas stations under the Coastal trademark.

The complaint alleges that in 1990, DGN began operating a gas station at 4815 Veterans Highway in Holbrook. In April, 1995, DGN was approached by Ocean to switch from being an Amoco franchisee to a franchi-

see of the Coastal defendants. Ocean and DGN entered into an agreement whereby DGN exclusively purchased products from Ocean and thereafter sold the products to the public under the Coastal trademark. It is alleged that on June 19, 1997, in violation of the PMPA, unilaterally and without notice, Ocean terminated DGN's franchise due to DGN's refusal to pay cash for petroleum deliveries. It is further alleged by the plaintiff's that after they purchased fuel from a competitor, employees and agents of Ocean arrived at the station on the night of June 23–24, 1997 and caused extensive vandalism forcing them to close the business and commence this action. As it relates to the Coastal defendants, DGN claims that they are liable under the PMPA as they had a "duty to supervise, oversee and/or ensure that their agent, defendant Ocean, complied with all applicable federal, state and municipal laws, rules and regulations...." The plaintiff also contends that Ocean and the Coastal defendants violated New York General Business Law § 199–a (Count II). However, that claim was voluntarily dismissed in the plaintiffs opposition brief.

On July 28, 1997, Ocean answered the complaint and asserted three counterclaims against the plaintiffs. The first and second counterclaims assert that the plaintiffs have not paid for the gasoline that was delivered to them in the amount of $152,585.12. The third counterclaim contends that the plaintiffs have failed to return, and thus converted, a credit card machine valued at $17,638. On October 7, 1997, the Coastal defendants answered the complaint and asserted a cross-claim against Ocean alleging that it was obligated to indemnify them for any potential liability. On June 26, 1998 Ocean filed a motion for summary judgment, pursuant to Federal Rules of Civil Procedure ("Fed. R.Civ.P.") 56(a) and (b) seeking dismissal of the plaintiffs' complaint and also granting judgment against the plaintiffs on their counterclaims. In addition, on June 26, 1998, the Coastal defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 for an order dismissing the complaint against them.

### A. Ocean's Declaration of Bankruptcy

On November 20, 1998, Ocean filed a voluntary petition, pursuant to Chapter 11 of the Bankruptcy Code, under Bankruptcy # 898–9184–478, in the United States Bankruptcy Court for the Eastern District of New York. Pursuant to 11 U.S.C. § 362(a) the automatic stay provisions stay "any act to collect, assess, or recover a claim against the debtor that arose before the commencement [of the bankruptcy proceeding]." However, on January 5, 1999, United States Bankruptcy Judge Eisenberg Ordered, pursuant to 11 U.S.C. § 362(d), that the automatic stay be lifted with respect to the complaint presently before this Court—to the extent of establishing the respective claims of the parties.

Therefore, presently before the Court is Coastal's motion for summary judgment seeking dismissal of the complaint, Ocean's motion for summary judgment on their counterclaims against the plaintiffs, and Ocean's motion for summary judgment seeking dismissal of the complaint.

## II. DISCUSSION

### A. Summary Judgment: the Standard

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Vann v. City of New York*, 72 F.3d 1040 (2d Cir.1995). The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Mere conclusory allegations, speculation or conjecture will not avail party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Thus, "the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citations omitted). The District Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd., Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

### B. The Court's Analysis

#### 1. Coastal's Motion for Summary Judgment

■ The purpose of the PMPA is to establish "minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel." *Checkrite Petroleum, Inc. v. Amoco Oil Co.*, 678 F.2d 5, 7 (2d Cir.1982) (quoting S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, reprinted in (1978) U.S.Code Cong. & Ad.News 873). "To that end, the PMPA sets forth various grounds and accompanying notice requirements for termination and non-renewal [of a franchise agreement], and prohibits the termination of a franchise on grounds other than those expressly specified in the legislation." *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304 (2d Cir.1986) In order for the provisions of the statute to apply, however, it is imperative that a franchise relationship exist between the parties that are the subject of the litigation.

The PMPA specifically defines the terms "franchise," "franchisor" and "franchise relationship." "Franchise" is defined as follows:

As used in this subchapter:

(1)(A) the term "franchise" means any contract—

(i) between a refiner and a distributor,

(ii) between a refiner and a retailer,

(iii) between a distributor and another distributor, or

(iv) between a distributor and a retailer, under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

(B) the term "franchise" includes—

(i) any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy;

(ii) any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed—

(I) under a trademark owned or controlled by a refiner . . . and

(iii) the unexpired portion of any franchise, as defined by the preceding provisions of this paragraph, which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of State law. . . .

15 U.S.C. § 2801(1). The PMPA defines the term "franchise relationship" as follows:

(2) The term "franchise relationship" means the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise.

*Id.* at § 2801(2). The PMPA defines the term "franchisor" as follows:

(3) The term "franchisor" means a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

*Id.* at § 2801(3). The PMPA defines the term "franchisee" as follows:

(4) The term "franchisee" means a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

*Id.* at § 2801(4). The PMPA defines the term "contract" as follows:

(10) The term "contract" means any oral or written agreement. . . .

*Id.* at § 2801(10).

■ Therefore, the plain meaning of the PMPA requires the existence of a contract in order for a franchise to exist. *See Russo v. Texaco, Inc.,* 630 F.Supp. 682, 687–688 (E.D.N.Y.1986), *aff'd,* 808 F.2d 221 (2d Cir. 1986) (citing *Bsales v. Texaco, Inc.,* 516 F.Supp. 655, 661 [D.N.J.1981]) [holding that "in order to have a franchise, there must be a contract between the parties, and that contract must pertain to the sale or distribution of motor fuel."]; *Brown v. American Petrofina Marketing, Inc.,* 555 F.Supp. 1327, 1332 [M.D.Fla.1983], *aff'd,* 733 F.2d 906 [11th Cir. 1984] [holding "that there must be a contract—either oral or written—between the parties which pertains to the sale or distribution of motor fuel."]. In addition, in *Rogue Valley Stations, Inc. v. Birk Oil Co.,* 568 F.Supp. 337 (D.Or.1983) ("Birk Oil"), the district court held that not only does the PMPA require a contract to trigger its provisions, it must be an express contract—not an implied contract. Specifically, the court stated that:

Plaintiff argues that a "franchise relationship" can grow out of a contractual relationship which is implied rather than express. The Act does not so contemplate. Congress defined "franchise" to include each of the possible relationships of refiner / distributor, refiner / retailer, distributor / distributor, and distributor / retailer, when a contract exists between the parties. Although Congress broadly defined "contract," it did not intend that a retailer who is supplied by a distributor could bring an

action against a refiner with whom the retailer has no relationship except ultimately receiving motor fuel. If it did so intend, Congress would not have specified the four possible combinations and defined a "franchise" to exist between parties only where there is a written or oral agreement. *Id.* 568 F.Supp. at 344.

■ It cannot be disputed that no express contract existed, either written or oral, between the plaintiffs and the Coastal defendants. As a result of that fact, the plaintiffs' assert that:

Coastal was clearly a party to the franchise agreement because although DGN dealt through Ocean, for two years DGN was selling Coastal motor fuel under the Coastal trademark. Nowhere has Coastal asserted that DGN was never permitted to use the Coastal trademark as a result of the oral arrangement initiated by Ocean's principal. Further, Coastal does not contend that it did not know that Ocean was selling Coastal brand gasoline to DGN for resale.... DGN always believed they were Coastal franchisees, and Coastal offers no evidence that Ocean was not authorized to create a franchise relationship on its behalf. Simply put, Coastal, through its agent Ocean, permitted DGN to use its trademark for over two years, while DGN sold Coastal products. Thus, since the PMPA defines a franchisor as a "refiner or distributor ... who authorizes or permits, **under a franchise,** a retailer or distributor to use a trademark in connection with the sale ... of motor fuel, the PMPA claim against Coast [sic] should not be dismissed".

(Emphasis added by Court). While the plaintiffs' claim that the Coastal defendants are liable under the PMPA due to Coastal's relationship with Ocean whereby Ocean distributes Coastal products, they are bound by the rule that in order for there to be a franchise agreement under the statute—a contract, either oral or written, must exist. As the court stated in *Birk Oil* although Congress broadly defined "contract," it did not intend that a retailer (DGN) who is supplied by a distributor (Ocean Petroleum) could bring an action against a refiner

(Coastal) with whom the retailer has no relationship except ultimately receiving its motor fuel. Although DGN was a retailer of fuel oil under the Coastal trademark, the only contract that can be said to have existed was between the plaintiffs and Ocean Petroleum—not the plaintiffs and the Coastal defendants. Accordingly, the Court finds that no franchise agreement existed between the plaintiffs and the Coastal defendants. As a result, the PMPA does not apply to these defendants and the Court grants the Coastal defendants motion for summary judgment dismissing the plaintiffs' complaint.

**2. Ocean's Motion for Summary Judgment**

■ Ocean claims that it is entitled to a judgment on its counterclaims. However, the Court finds that viewing the evidence in the light most favorable to the plaintiffs, material issues of fact exist as to their counterclaims. Ocean's contention that the plaintiffs "converted" their credit card machine also raises factual issues that cannot be resolved on a motion for summary judgment. Similarly, Ocean's motion for summary judgment seeking dismissal of the plaintiffs' complaint is also denied as the outcome is factually determinative. The resolution of the plaintiffs' complaint, the defendant's counterclaims, and who terminated the franchise relationship are all issues of material fact for the jury to determine. Therefore, Ocean's motion for summary judgment on their counterclaims as well as their motion for summary judgment seeking dismissal of the complaint are denied.

For the reasons stated above, it is hereby

**ORDERED,** that Coastal defendants' motion for summary judgment seeking dismissal of the complaint as it relates to them is **GRANTED;** and it is further

**ORDERED,** that Ocean Petroleum's motion for summary judgment on their counterclaims is **DENIED;** and it is further

**ORDERED,** that Ocean Petroleum's motion for summary judgment seeking dismissal of the complaint as it relates to them is **DENIED;** and it is further

**ORDERED,** that the remaining parties appear for jury selection on February 16, 1999 at 9:00 AM; and it is further

**ORDERED,** that the caption shall now read as follows:

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

DENISE PETROLEUM, INC., and DGN PETROLEUM CORP., Plaintiffs,

against

OCEAN PETROLEUM, INC., Defendant.

**SO ORDERED.**