Opinion issued December 8, 2005











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00260-CV




JACK DOUGLAS, APPELLANT

V.

PETROLEUM WHOLESALE, INC., APPELLEE




On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2000-60797




O P I N I O N
          Appellant, Jack Douglas, sued appellee, Petroleum Wholesale, Inc. (“PWI”),
for violation of the Petroleum Marketing Practices Act (“PMPA”)


 by terminating
Douglas’s use of the Diamond Shamrock trademark, signage, branded motor fuel, and
credit card facilities. Following a bench trial on the merits, the trial court entered a
take-nothing judgment in favor of PWI, concluding that the relationship between
Douglas and PWI was not a franchise within the meaning of the PMPA. We affirm.
BACKGROUND
          PWI was an authorized wholesale distributor of several brands of motor fuel,
including Diamond Shamrock. In October 1997, Douglas purchased a gas station and
convenience store business that had operated as a Diamond Shamrock station under
a Fuel Marketing Location Agreement (“FMLA”) between PWI and the owner of the
premises. Douglas leased the real property and fuel equipment, including gas storage
tanks and dispensing lines, from the premises owner. 
          The FMLA provided for mandatory assignment of the FMLA in the event that
the business was sold. The assignment provision also required written consent of
assignment by PWI, but PWI never signed an acknowledgment of assignment to
Douglas. However, with knowledge of the transfer in ownership of the business, PWI
continued to do business with Douglas under the terms of the FMLA, as it had with
the previous owner. Although Douglas testified that he never saw the FMLA, he
knew of its existence and that he was required to assume the agreement when he
purchased the business. The parties did not enter into any other written agreement. 
In August 1998, Douglas purchased the real property and fuel equipment. 
          The FMLA provided, “Title to all such fuel inventories shall remain in PWI
until purchased by and delivered to a customer.” It further provided, under the
heading “LEGAL CONSTRUCTION,” “This contract shall be construed as a contract
of consignment for sale and not a contract of agency.” 
          From October 1997 until March 2000, PWI supplied Douglas with Diamond
Shamrock branded motor fuel. During this time, Douglas used the existing Diamond
Shamrock credit card facilities and the Diamond Shamrock trademark, signage,
uniforms, and decals. PWI delivered motor fuel into Douglas’s tanks on an as-needed
basis, sometimes at Douglas’s request and sometimes on PWI’s own initiative. 
Douglas did not pay for the fuel upon delivery. PWI invoiced Douglas weekly for the
wholesale price for the fuel that had been dispensed during the previous week. The
wholesale price charged by PWI included a two-cents-per-gallon transportation
markup. PWI neither set the retail price of the gasoline nor had any stake in the profit
margin at the retail level. Douglas’s profit from the sale of the gasoline consisted of
the difference between the wholesale price paid to PWI and the retail price charged
to the consumer.
          Credit card payments went directly to Diamond Shamrock, who notified PWI
of the amount. The invoice from PWI credited Douglas for the amount of the credit
card payments. Douglas received all cash and check payments for gasoline and
deposited them in his bank account. PWI drafted Douglas’s bank account for the
balance due as shown on the invoice. 
          Both Douglas and PWI testified that they paid personal property taxes on the
gasoline inventory at the property, and both produced personal property tax
statements to support their claims. However, Douglas testified that the Wharton
County taxing authority simply sent him a bill, which showed the same valuation for
improvements in 1997, 1998, and 1999. He stated that he never told the authority the
value of the gasoline in his storage tanks. On the other hand, PWI testified that the
fuel was the only personal property it owned at that location and that its tax statement
showed that it paid personal property taxes on that fuel. 
          In March 2000, a PWI sales manager informed Douglas that his store was being
“de-branded” by Diamond Shamrock and that he could no longer sell Diamond
Shamrock fuel. Douglas received no written notice of the de-branding. Diamond
Shamrock arranged within the month to pick up the signs at Douglas’s station. 
          Douglas sued PWI, alleging that PWI had wrongfully terminated its franchise
relationship with him in violation of the PMPA. 
 

DISCUSSION
Findings of Fact
          The trial court recited its findings of fact and conclusions of law in the final
judgment. Findings of fact recited in a judgment do not satisfy the requirement of
rule 299a, which states, “Findings of fact shall not be recited in a judgment” and
requires that they be separately filed. Tex. R. Civ. P. 299a. In the absence of
separately filed findings of fact, “it is implied that the trial court made all the
necessary findings to support its judgment.” Roberson v. Robinson, 768 S.W.2d 280,
281 (Tex. 1989). 
          We deem the following findings of fact as necessary to support the trial court’s
judgment: 
1.PWI supplied fuel to Douglas on consignment; 
 
2.PWI paid personal property taxes on the fuel in Douglas’s
underground pumps; 
 
3.The fuel belonged to PWI while it was in Douglas’s
underground pumps; and 
 
4.Douglas did not purchase fuel from PWI.

Standard of Review
          On appeal, in his only point of error, Douglas contends, “The Trial Court was
incorrect as a matter of law in finding that Douglas’ relationship with PWI was not
a franchise within the meaning of the PMPA because Douglas met all the necessary
indicia of economic risk and entrepreneurial responsibility to be a retailer as defined
by the PMPA.” 
          Statutory construction is a question of law for the court to decide. Havlen v.
McDougall, 22 S.W.3d 343, 345 (Tex. 2000). We review a trial court’s legal
conclusions de novo. See In re E.I. du Pont de Nemours and Co., 92 S.W.3d 517, 522
(Tex. 2002). Whether a gas station operator is a “retailer” under the PMPA is a
question of law. Farm Stores, Inc. v. Texaco, Inc., 763 F.2d 1335, 1342 (11th Cir.
1985). 
          In interpreting a statute, we must first look to the language of the statute itself. 
Lewis v. United States, 445 U.S. 55, 60, 100 S. Ct. 915, 918 (1980); Texas Dep’t of
Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). We must regard that language
as conclusive unless the legislature has clearly expressed its intention to the contrary. 
Consumer Prods. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct.
2051, 2056 (1980); see also Checkrite Petroleum, Inc. v. Amoco Oil Co., 678 F.2d 5,
7 (2nd Cir. 1982) (applying standard of review to interpretation of PMPA). 
The Petroleum Marketing Practices Act
          Congress enacted the PMPA in 1978 in response to concerns that franchisees
selling motor fuels needed greater protection from arbitrary termination of their
franchises. Brach v. Amoco Oil Co., 677 F.2d 1213, 1216 (7th Cir. 1982). Congress
designed the PMPA to address specific concerns regarding both the disparity in
bargaining power between motor fuel retailers and distributors/refiners as well as the
concern that franchise terminations and non-renewals were disrupting the reasonable
expectations of the parties that the franchise would be a continuing one. Id. Because
the PMPA is a remedial statute, the courts are called to construe its provisions
liberally in conformity with its overriding purpose to protect franchisees in the motor
fuels marketing industry. Id. at 1221. However, its shield is only available if the
hypothetical franchisee can fit into the PMPA’s statutory definitions of “distributor”
or “retailer” of motor fuels under a brand name. Farm Stores, Inc., 763 F.2d at
1339–40. For the purposes of this case, only the statutory definitions of “franchisee,”
“distributor,” and “retailer” are pertinent. The PMPA provides the following
definitions for these terms:
(4) The term “franchisee” means a retailer or distributor (as the
case may be) who is authorized or permitted, under a franchise, to use
a trademark in connection with the sale, consignment, or distribution of
motor fuel. 

                    . . . . 
 
(6) The term “distributor” means any person, including any
affiliate of such person, who
 
(A) purchases motor fuel for sale, consignment, or
distribution to another, or 
 
(B) received motor fuel on consignment for consignment
or distribution to his own motor fuel accounts or to accounts of his
supplier, but shall not include a person who is an employee of, or merely
serves as a common carrier providing transportation service for, such
supplier.
 
(7) The term “retailer” means any person who purchases motor
fuel for sale to the general public for ultimate consumption. (Emphasis
added.)

15 U.S.C. § 2801(4), (6), (7). 
          Under the PMPA, consignments are protected only for distributors who take
motor fuels on consignment from refiners; retailers, by definition, must purchase
motor fuel in order to gain PMPA protection. Thus, in order to recover as a PMPA
franchisee, Douglas must show that he is a “retailer” who purchased motor fuel for
sale to the general public. 
          Douglas contends that he is a retailer under the PMPA because he meets the
test of having “significant indicia of entrepreneurial responsibility or economic risk
in the operation of the motor fuel sales at his store.” Douglas cites Johnson v. Mobil
Oil Corp., 553 F. Supp. 195 (S.D.N.Y 1982); Farm Stores, Inc., 763 F.2d at 1335;
Miller v. W.H. Bristow, Inc., 739 F. Supp. 1044 (D.S.C. 1990); Sigmon v. Widenhouse
Service, Inc., 638 F. Supp. 808 (M.D.N.C. 1986); and Automatic Comfort, Corp. v.
D & R Service, Inc., 620 F. Supp. 1349 (D.Conn. 1985) as examples of courts’
application of the entrepreneurial-responsibility test to determine the issue of whether
a gas station operator is a retailer under the PMPA. 
          The Johnson court was the first to employ a “broader analysis that looks to the
totality of the business relationship” to determine whether a gas station operator fell
within the protection of the PMPA. 553 F. Supp. at 198. After recognizing that “the
‘starting point’ must be the language of the statute itself,” citing Checkrite Petroleum,
678 F.2d at 7, and concluding that the plaintiff did not purchase the gasoline for
resale and did not qualify as a franchisee, the court went on to analyze the facts to
determine whether there were sufficient indicia of entrepreneurial responsibility and
risk for the plaintiff to be an independent businessman and, thus, to qualify as a
franchisee. Id. at 198–99. The court concluded that, although there were some
indicia of independent status, there were not enough to find that the plaintiff was a
franchisee. Id. at 201. 
          By engaging in its analysis of entrepreneurial responsibility and risk, the
Johnson court was not in step with the Checkrite Petroleum court. Not only did the 
court in Checkrite Petroleum state that the language of the statute was the starting
point and was conclusive, absent clearly expressed legislative intent otherwise; it also
stated, “Strict construction is particularly appropriate where, as here, the statute in
question is in derogation of common law rights.” Checkrite Petroleum, 678 F.2d at
7, 8. 
          Other courts have often followed Johnson rather than Checkrite Petroleum. 
They generally look first to the statutory definitions to determine whether the party
seeking protection meets the definition of “retailer” or “distributor.” Upon a
determination that it does not, they go on to analyze the relationship of the parties to
determine whether the party seeking protection meets the entrepreneurial
responsibility and risk test. Invariably, it does not. See, e.g., Farm Stores, 763 F.2d
at 1342, 1345–46 (holding that Farm Stores did not purchase motor fuel, then
considering level of Farm Stores’ business independence);


 Sigmon, 638 F. Supp. at
810, 811, 813 (stating that courts have followed two approaches in determining
whether parties come under protection of PMPA, express language of statute and
totality of circumstances, and concluding that plaintiff did not meet either test);
Automatic Comfort, 620 F. Supp. at 1354, 1358 (finding that defendant did not
qualify for protection under PMPA as purchaser and, in spite of some indicia of
entrepreneurial responsibility, did not prove enough to be franchisee). In light of the
clear language of the PMPA, we decline to take this dual approach. 
CONCLUSION
          We consider the indicia of entrepreneurial responsibility to be relevant only to
the extent that it establishes that a gas station operator purchases motor fuel for resale
to the public. An operator who purchases fuel necessarily undertakes the risks
involved in the resale of that fuel. In the present case, the evidence established that
Douglas took the motor fuel on consignment and that PWI owned the fuel until it was
purchased by the consumer. Because Douglas did not purchase fuel from PWI, he
does not meet the statutory definition of “retailer” and does not come under the
protection of the PMPA. 
          We overrule Douglas’s sole issue and affirm the judgment of the trial court.
 

                                                                        Sam Nuchia
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.