**Opinion issued August 6, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00820-CV

————————————

## MELANEE DAGNES, Appellant

## V.

## OXFORD PLACE APARTMENTS, Appellee

---

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1115018**

---

## MEMORANDUM OPINION

Appellant, Melanee Dagnes, appearing pro se, challenges the trial court's

judgment in favor of appellee, Oxford Place Apartments (Oxford Place), in its

forcible-detainer action against her for nonpayment of rent.[1] In what we construe to be three issues,[2] Dagnes contends that the trial court was biased against her, the evidence of nonpayment was insufficient, and her eviction was retaliatory in violation of the Texas Property Code. *See* TEX. PROP. CODE ANN. §§ 92.331, .335 (prohibiting retaliation by landlord for certain acts taken by residential tenants).

We affirm.

## Background

Oxford Place, a public housing development operated by Houston Housing Authority (HHA), filed an eviction petition in the Harris County justice court, alleging that "for the period beginning June [2018] and running through the present," Dagnes failed to pay rent totaling $103.00.[3] The justice court entered a judgment of possession in favor of Oxford Place and ordered Dagnes to pay

---

[1] *See* TEX. PROP. CODE ANN. § 24.002 (setting out circumstances under which person commits forcible detainer).

[2] Dagnes phrases her issues as follows: "Issues are biasness towards and for appellee and its counsel. The trial court openly disregarded the few words that I was allowed to say as the Honorable Judge sided with its plaintiff and counsel thus repeating statements verbatim from plaintiff's counsel. Issue with appellee is eviction done in proven bad faith and retaliation despite my on time rental payment."

[3] *See id.* § 24.004 (providing that justice court in precinct in which real property located has jurisdiction in eviction suits including forcible-detainer suits).

$186.06 in rent owed, $100.00 in attorney's fees, and court costs. Dagnes appealed to the Harris County civil court at law for a trial de novo.[4]

At the hearing, the trial court admitted into evidence Oxford Place's Exhibit 1, the Residential Lease Agreement (the Lease) between Dagnes and HHA, dated July 1, 2017. The Lease permitted Dagnes and her three children to occupy Oxford Place unit #807 (the "property") for a term of one year, and it required her to pay rent in the amount of $103.00 on the first day of each month. It also provided that a $15.00 late fee would be incurred for rent not received by the fifth day of the month.

The Lease gave HHA the right to terminate "only for serious or repeated violations of material terms of the Lease, or for other good cause," such as "failure to . . . make payments due under the Lease." It further stated that "[i]f rent is not paid on time, Tenant is in default and all remedies under state law and this Lease contract will be authorized."

The Lease also stated that payment for "charges in addition to rent" is due "on the first day of the month after the charge is incurred provided that a minimum of fourteen (14) days' notice has been given," and that failure to pay such charges "in full when due is a serious lease violation and shall be grounds for lease termination."

---

[4]     *See* TEX. R. CIV. P. 510.10 (providing that eviction cases appealed from justice court are tried de novo in county court).

3

To terminate for nonpayment of rent, the Lease required HHA to give fourteen days' written notice stating the "specific reasons for the termination," informing the tenant of her "right to make such reply as he/she may wish," and offering the tenant an opportunity for a grievance hearing. The Lease also prohibited HHA from terminating "until the time for the tenant to request a grievance hearing has expired."

Patrizia McQueen, Oxford Place's property manager, testified that Dagnes's Lease was terminated because she failed to pay her June 2018 rent, as reflected in Oxford Place's Resident Ledger for Dagnes' account (the Ledger), which the trial court admitted as Exhibit 3.

The Ledger included a $104.59 charge dated March 6, which McQueen explained was for replacing broken miniblinds in Dagnes's unit. The trial court admitted the maintenance invoice notice for the charge into evidence as Exhibit 2. The notice stated that the $104.59 charge was "incurred and authorized when [Dagnes] called in work order #728607," provided that payment was due on May 1, and advised that "failure to pay maintenance charges or other fees in addition to rent in full when due is a serious lease violation and grounds for lease termination."

The Ledger also reflected a $15.00 late-rent fee for Dagnes's failure to pay March rent by the fifth of the month. McQueen testified, and the Ledger reflected,

4

that Dagnes paid $118.00 on March 26, covering her March rent and the late fee and bringing her balance to zero, but carrying forward the $104.59 maintenance charge due May 1.

Dagnes paid her April rent on time but was late with her May rent payment, and thus incurred another $15.00 late fee. On May 29, Dagnes made a $221.00 payment to her account. McQueen testified that of that amount, Oxford Place allocated the first $118.00 to pay Dagnes's May rent and late fee, and the remaining $103.00 to pay down the overdue maintenance invoice of $104.59, leaving Dagnes with a balance of $1.59.

McQueen testified, as reflected in the Ledger, that Dagnes did not pay her June rent by June 5. McQueen further testified that on June 6, she delivered a notice to Dagnes that her Lease would be terminated for nonpayment of rent. The notice, which the trial court admitted as Exhibit 4, informed Dagnes that she had ten days to request a grievance hearing.

On June 24, McQueen sent Dagnes a notice to vacate, stating that she had three days to vacate the property and advising her of HHA's intention to file an eviction suit against her should she fail to comply. The trial court admitted the notice to vacate into evidence as Exhibit 5.

5

McQueen testified that as of the day of trial in the county court, August 21, 2018, Dagnes had not vacated the property. She asked for a judgment evicting Dagnes and ordering her to pay a total of $309.00 for June, July, and August rent.

Dagnes did not cross-examine McQueen, and Oxford Place rested. Dagnes then asked that the case be continued for one week to afford her an opportunity to attend a legal clinic where she hoped to obtain counsel. The trial court granted her request.

When trial resumed on August 28, Dagnes reported that she had been unsuccessful in finding legal counsel. She then testified that before she received the notice terminating her Lease, she had made "multiple" maintenance requests that involved "safety issues and breaches," but "they were never remedied." Instead, "they [would] say it's going to be taken care of then months later I call and inquire and then they have me to put a request again and just blatant denials as well." As a result, Dagnes "went to the regional subsidized . . . Governmental entity who takes care of [her] portion of the rent and [she] made a complaint to them." Dagnes then tendered a document to the trial court, indicating that it confirmed that her complaint had been received.

The evidence was not admitted. Instead, the trial court explained, "[W]hatever you said about the maintenance issues . . . [it] will not be able to consider in this case," because "the only issue in front of this Court is who has

6

superior right of possession to the property." Dagnes asked, "[Y]ou said you can't accept this as far as the retaliation that had been mentioned?" The trial court answered, "No," explaining that "the maintenance issues or repair issues, that portion [the court] cannot consider as a counterclaim" because "the rules [do] not allow the Court to consider any counterclaims, retaliations maybe."

Dagnes once again urged the trial court to admit the evidence, stating, "I would really like for you to consider the retaliation piece because that's what this whole eviction is based on and I can prove—I believe I can prove that." She further stated that the evidence—a document dated February 28, 2018—confirmed that her complaint about the maintenance issues "was received and would be forwarded to the appropriate authorities."

Dagnes also testified that she paid her June rent. The trial court asked, "[Y]ou put it [into the registry of] the Justice Court?" and Dagnes responded, "Yes, ma'am, I did." Dagnes also stated that she had attempted to pay her July rent, but McQueen had returned it to her.

Regarding the maintenance charge, Dagnes stated that she did not request that the miniblinds be replaced and she was not aware that she could deny the maintenance team permission to replace the miniblinds.

7

Dagnes also stated that "the lease agreement is unsigned," and that she "did not know [her] obligations" under the Lease. But she then acknowledged that her initials were on each page of the Lease and that the signature was hers.

Finally, Dagnes challenged Oxford Place's compliance with the Lease's notice and grievance hearing provisions. She testified that she did not receive notice that her Lease was terminated until June 24, and thus that she was not given fourteen days to request a grievance hearing before Oxford Place filed its eviction petition on July 8. But Oxford Place's counsel explained that Dagnes was confusing the June 24 notice to vacate with the June 6 lease termination notice, which stated that she would have ten days from June 6 to request a grievance hearing. Dagnes then testified that she had not received the June 6 termination notice.

After hearing the evidence, the trial court rendered judgment in favor of Oxford Place, ordering Dagnes to surrender possession of the property and pay Oxford Place $299.03 (for June, July, and prorated August rent) in damages plus costs of court. The trial court asked Dagnes if she needed more than one week to vacate. Dagnes answered that she did, and the trial court granted her an additional ten days.

## Sufficiency of the Evidence

We begin with Dagnes's second and third issues, which we construe to challenge the sufficiency of the evidence supporting the trial court's judgment that Oxford Place had a superior right of possession of the property. Specifically, Dagnes challenges the trial court's implied findings that she failed to pay her June 2018 rent and that she failed to prove her retaliation defense.

### A.    Standard of Review

In an appeal from a bench trial, we review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anglo-Dutch Petroleum Int'l, Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 626 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). When a trial court issues no findings of fact, we imply that the trial court made all the necessary findings to support its judgment. *Douglas v. Petroleum Wholesale, Inc.*, 190 S.W.3d 97, 99 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam)). The trial court judges the credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). If the evidence falls

"within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In reviewing a "no evidence" or legal sufficiency challenge to the evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 827. The appellant must demonstrate that there was no evidence to support the challenged finding when she attacks the legal sufficiency of a finding on which she did not have the burden of proof. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the appellant challenges the legal sufficiency of a finding on which she did have the burden of proof, she must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

In conducting a factual-sufficiency review, we must examine, consider, and weigh all the evidence that supports or contradicts the fact finder's determination.

*See Francis*, 46 S.W.3d at 242. We will set aside the judgment only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that it is clearly wrong and unjust. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## B.    Nonpayment of Rent

In her second issue, Dagnes argues that the evidence was insufficient to support the trial court's implied finding that she was in default under the Lease. The Lease, admitted into evidence at trial, provided that if Dagnes failed to pay rent by the fifth day of the month, she would be in default, entitling Oxford Place to terminate her right of occupancy and evict her.

To prove nonpayment of rent, Oxford Place offered the Ledger for Dagnes's account as well as McQueen's testimony. Dagnes argues that this evidence is insufficient because she did in fact pay her June 2018 rent. But other than her own testimony, she did not present any evidence to prove this. And while she states that she received a receipt from Oxford Place for payment of her June rent, she did not introduce a receipt or any other proof of payment into evidence at trial.[5]

---

[5]    Although Dagnes maintains that she paid her rent on time, at trial, she did not testify or otherwise show that she made a payment by the Lease's June 5 deadline. And Dagnes's testimony indicates that her June 2018 rent was paid into the registry of the justice court after the eviction suit was filed in July 2018, well after the Lease's June 5 deadline for payment.

11

Based on the record before us, we conclude that a reasonable fact finder could credit Oxford Place's evidence supporting an implied finding of nonpayment of rent. *See City of Keller*, 168 S.W.3d at 827. Additionally, after weighing all of the evidence in the record, we cannot say this finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We therefore hold that the evidence was both legally and factually sufficient to support the trial court's implied finding that Dagnes did not timely pay her June 2018 rent. *See City of Keller*, 168 S.W.3d at 826–27.

We overrule Dagnes's second issue.

## C.     Retaliation

In her third issue, Dagnes asserts that the real reason Oxford Place filed its eviction petition against her was not because she was behind on rent, but in retaliation for her "reporting to regional offices regarding maintenance requests." We view this as a challenge to the trial court's implied finding that the evidence supporting her retaliation defense was insufficient.

Dagnes's retaliation defense is based on Chapter 92 of the Property Code, which prohibits a landlord from retaliating against a tenant. *See* TEX. PROP. CODE ANN. § 92.331; *see also id.* § 92.335 (retaliation under section 92.331 is defense to eviction suit). Pertinent here, section 92.331 prohibits a landlord from filing an eviction suit because of (and within six months of) a tenant's request for a repair or

12

good faith complaint to a governmental entity about a building or housing code violation. *See id.* § 92.331.

At trial, Dagnes testified that she was evicted in retaliation for her multiple maintenance requests involving "safety issues and breaches" and her complaint to the regional housing authority that these requests had gone unanswered by Oxford Place, all of which occurred within the six-month period prior to her receipt of the termination notice and Oxford Place's filing of the eviction suit. Other than Dagnes's testimony, the record does not contain any evidence of the maintenance requests or complaint to the regional housing authority, or other evidence tending to show a retaliatory motive on the part of Oxford Place.

Oxford Place, for its part, argues that Dagnes was evicted because she was in default under the Lease for nonpayment of rent, which the Property Code expressly states does not constitute retaliation. *See id.* § 92.332(b)(1) ("An eviction or lease termination based on the following circumstances, which are valid grounds for eviction or lease termination in any event, does not constitute retaliation: (1) the tenant is delinquent in rent when the landlord gives notice to vacate or files an eviction action . . . ."); *see also id.* § 92.331 (excepting "grounds stated by Section 92.332" from prohibition against retaliatory eviction). As discussed above, Oxford Place presented sufficient evidence that Dagnes was in default for failure to pay

her June 2018 rent. Further, McQueen testified that Oxford Place instituted eviction proceedings against Dagnes for that reason.

Based on the record before us, we conclude that Dagnes failed to conclusively establish all vital facts in support of her retaliation defense, *see Francis*, 46 S.W.3d at 241, and the trial court's judgment in this regard is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, *see Cain*, 709 S.W.2d at 176. Accordingly, we hold that Dagnes's evidence was legally and factually insufficient to establish her retaliation defense.

We overrule Dagnes's third issue.

## Judicial Bias

In her first issue, Dagnes asserts that she was not allowed to present her evidence and that the trial court "openly disregarded the few words that [she] was allowed to say" because it "sided with" Oxford Place. We construe this to be an assertion that the trial court's rulings constitute judicial bias.

A trial court's rulings alone "almost never constitute a valid basis for a bias or partiality motion," and its opinions formed at trial do not amount to bias unless they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Francis*, 46 S.W.3d at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Dagnes does not identify any particular ruling that she contends demonstrates the trial court's bias, and after carefully reviewing the trial

14

record, we conclude that the trial court did not exhibit deep-seated favoritism or antagonism that would make fair judgment impossible. *See id.* at 241; *accord Markowitz v. Markowitz*, 118 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Only in the rarest circumstances are judicial rulings demonstrative of the degree of favoritism or antagonism required to show that a fair and impartial trial is impossible.").

We overrule Dagnes's first issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Kelly, and Goodman.